58 639
59 715

### THE TOPEKA WATER CO. v. KATE J. WHITING.
#### No. 10215.

1. WATER COMPANY — *flushing mains, must not negligently imperil persons using streets for travel.* The fact that a municipality confers upon a water company the right to place its hydrants in the streets and to open them for the purpose of flushing its mains, gives the company no license or right to flush at such times and in such a manner as to unnecessarily impede travel or imperil the safety of those passing and repassing over the street.

2. —— *permission to flush imposes obligation to use reasonable care.* The license to flush carried with it the obligation to do so with reasonable care and a due regard for the rights of others.

3. —— *open hydrant calculated to frighten horses.* The testimony examined, and held that it tends to show that an open hydrant, from which water was thrown about ten feet into the street with considerable noise and spray, is calculated to frighten ordinarily gentle horses.

4. —— *and company bound, for that reason, to take precautions for safety of people traveling streets.* In view of this fact, it was the duty of the water company, in flushing its mains,

to adopt such precautions, and exercise such care, for the protection and safety of those traveling upon the streets, as an ordinarily discreet and prudent person would, under like circumstances, adopt and exercise.

5. ——— *whether precautions taken, sufficient, question for jury.* Ordinarily it is a question of fact, in each case, whether the precautions taken and the care exercised are sufficient to warn and protect travelers who are using ordinary care.

6. STREETS—*persons using, not bound to keep eyes on pavement watching for dangers.* Persons using a street which is in constant use, and when their attention has not been called to any obstructions or perils thereon, have a right to presume that the street is reasonably safe for ordinary travel. While they must act with reasonable care, they are not required to keep their eyes upon the pavement continuously, watching for obstructions or pitfalls.

7. ——— *and finding that person injured by horse becoming frightened, was using due care, conclusive.* Upon examination of the testimony, it is held that the question whether the plaintiff below was in the exercise of due care when her horse was frightened and the injury inflicted, was fairly a question for the jury, and that the finding in her favor upon the question is conclusive.

Error from Shawnee District Court. Hon. Z. T. Hazen, Judge. Opinion filed November 6, 1897. *Affirmed.*

*D. W. Mulvane* and *N. H. Loomis*, for plaintiff in error.

*Waters & Waters, E. F. Hilton* and *A. W. Dana*, for defendant in error.

JOHNSTON, J. Near the noon hour, on December 21, 1891, Kate J. Whiting, accompanied by her mother and sister, was driving upon one of the streets of Topeka, when their horse became frightened at the water spurting or flowing from an open hydrant in the street and turned around suddenly, capsizing the buggy, and breaking Kate J. Whiting's arm and otherwise seriously injuring her. The hydrant, which was upon a dead end of a main, was opened by an employee of

the Topeka Water Company for the purpose of flushing the main and relieving it of the stagnant and impure water therein.

The plaintiff below alleged, and it is her contention, that the Water Company was culpably negligent in doing the flushing at the time when and in the manner in which it was done, and in failing to take due care for the protection and safety of those who were then passing along the street. The Company, on the other hand, claims that, as the right to place hydrants upon the streets had been conferred on it, it was rightfully upon the street; that the flushing of the main at that point was necessary; and that it was done in the usual and ordinary way and at a proper time. There was a further contention in favor of the Company that the plaintiff below was negligent in failing to earlier observe the open hydrant so that she could take greater care in controlling the horse and avoiding accident or injury. It appears that the flow from the hydrant extended into the street for about ten feet, and could have been seen by the Whitings, if their attention had been directed to it, for a distance of about five hundred feet. Grace Whiting was driving the horse, and neither she nor the plaintiff below noticed the flowing hydrant until they were within one hundred feet of it; and just at that time and place the horse discovered it, took fright, and overturned the buggy. The trial resulted in a verdict in favor of the plaintiff below, in the sum of five thousand dollars; and the principal contention of the Company is, that the testimony was insufficient to support the verdict or to show culpable negligence on the part of the Company.

That the Company had the right to place its hydrants in the streets and to flush them is conceded; but it had no license or right to flush them at such a

41—58 KAN.

time or in such a manner as to impede travel or imperil the safety of those passing or repassing over the street. The license to flush carried with it the obligation to do so with reasonable care and a due regard for the rights of others. The primary purpose of streets is use by the public for travel and transportation; and if the Water Company unnecessarily interfered with that use or negligently flushed its mains, thereby causing injury to others, it is liable for the consequences of such negligence. The testimony abundantly shows that an open, flowing hydrant is calculated to frighten horses of ordinary gentleness. Some of the witnesses said that the flowing water made a roaring noise; others, that it came with a great splash; while others said that there was a great deal of spray and froth. Experienced horsemen testified that gentle and well-broken horses were apt to be frightened at such objects; and it appears that, while the hydrant in question was open for only a few minutes, three driving horses were actually frightened by it. Whether an object is such as is calculated to frighten a gentle and road-worthy horse, is usually a question of fact for the jury to determine. On these questions the findings of the jury are in favor of the defendant in error. The horse was gentle, the driver was experienced in handling horses, and the jury found that the manner in which the flushing was done had a peculiar tendency to frighten ordinarily gentle and well-broken horses. The Water Company was aware of this tendency, as the jury have found; and yet no precautions were taken to warn passers-by of the impending danger or to protect them from injury. The employee who opened the hydrant was from one hundred to one hundred and fifty feet

*1, 2. Company must not imperil persons using street— license to flush imposes care.*

*3. Open hydrant frightens horses.*

distant from the same when the horse took fright, and, from his testimony, it is evident that he was not endeavoring to warn or protect those passing along the street.

It is said that the method of flushing in this instance was the usual and ordinary one which had been pursued; but this will not avail the Company, as it cannot be sheltered from liability by frequent trespasses upon the rights of others nor by the long continuance of negligent methods. What precautions 4. Precautions should have been taken, and what denecessary. gree of care should have been exercised? It is generally said that there should be that care and prudence which an ordinarily discreet and careful person would exercise under like circumstances. The protection and care which it is necessary to use in cases of this kind must be determined by the character of the risk and the nature of the threatened injury. It is claimed that the hydrants might have been opened in the nighttime, when few if any persons would be passing along the street; and it appears that sometimes the flushing was done at night. It is also claimed that employees might have been stationed at the open hydrant to shut off the water on the approach of frightened horses, or one stationed on either side of it to warn travelers of the danger. A flag-signal or other object of warning might have been placed on either side of the hydrant, to call the attention of travelers to the open hydrant and thus enable them to better control their horses or to turn aside and pass over another street. Still another method is suggested, which appears to be quite practicable, and that is to conduct the water from the hydrant through a suitable hose. Just what method should have been employed and what precautions

5. Whether due precautions taken, question for jury.

should have been taken, we need not determine, but certainly they should have been sufficient to accomplish the purpose. It is a question of fact, in each case, whether the precautions taken and the care exercised are sufficient to warn or protect travelers who are using ordinary care; and, under the testimony and findings of the jury, it must be held that the Company failed to use that care which the law required of it.

We are not favorably impressed with the contention that the plaintiff below and her sister Grace were guilty. of contributory negligence. It appears that they were riding in a single-seated buggy, and that Grace, who was seated between her mother and the plaintiff below, was driving. They were talking about Christmas presents which they were intending to purchase. The plaintiff below and her mother were not giving special attention to the street or keeping a lookout for obstructions. Grace, however, was giving ordinary attention, and, as the jury have found, was exercising reasonable care. Although they had driven into and through the street frequently, they had never seen an open, flowing hydrant, and were not anticipating any danger from that source. It is true that the open hydrant was within range of their vision, if their attention had been called to it, and it was discernible before it was discovered by them. They were

6. Persons using streets not bound to use extraordinary care.

not, however, required to keep their eyes upon the pavement continuously, looking for obstructions and pitfalls. It was a street which was in constant use, and over which they had passed almost daily without encountering such danger. While they must still act with rea-sonable care, they had a right to presume, and to act ·on the presumption, that the street was reasonably

safe for ordinary travel.   They were not required to use the wisest precautions nor extraordinary care, but only such as persons of common prudence ordinarily exercise under similar circumstances.   Grace did discover the danger when within about one hundred feet of it, and it appears from the testimony that others whose horses were frightened did not observe the danger until they were quite close to it.   Under these circumstances, it certainly cannot be said, as a matter of law, that the plaintiff in error was guilty of contributory negligence.   Whether she and her sister were in the exercise of ordinary care, was fairly a question for the jury, and their finding in her favor is conclusive.

Complaint is made because the court in its charge remarked that slight negligence should not necessarily defeat a recovery by the plaintiff if the Company was guilty of gross negligence.   It is claimed that there was no averment or testimony which warranted the allusion to gross negligence.   There is but little in the testimony tending to show gross negligence, but, as we have seen, the method used for flushing was calculated to frighten even gentle horses.   The hydrant was opened in the daytime, when many persons were passing along the street.   The jury found that the Company was aware that the flowing hydrant had a tendency to frighten ordinarily gentle and well-broken horses, and yet, with this knowledge, it pursued the negligent method.   Under the circumstances, we think the degree of negligence was a matter for the determination of the jury, and we cannot say that prejudicial error was committed by the reference to gross negligence.   When the trial court came closer to the facts in the case, it instructed that the Company was required to exercise ordinary care, and also that the plaintiff below was

7. Finding that person used care, conclusive.

held to the exercise of the same degree of care; and the jury have practically found that she exercised ordinary care.

There are some other criticisms of the charge of the court, and also of its rulings upon the testimony and findings; but we find nothing substantial in them. The judgment of the district court will, therefore, be affirmed.