## The Chicago, Rock Island and Pacific Railway Company v. John D. Parks.

### No. 10846.

1. NEGLIGENCE OF ENGINEER IN BLOWING WHISTLE—*of standing locomotive near crossing, renders railway company liable for injuries from runaway caused thereby.* In order to render the master liable for a wrongful act of his servant it must appear that the act was done either at the master's command, or in connection with the performance of some service, or the transaction of some business for him. But an engineer in charge of an engine and engaged in moving cars over the railroad of his employer acts for the master in sounding the whistle and in giving signals at road crossings, as well as in moving his engine and train, unless it appears that the act is done for some personal motive of the engineer and is disconnected from the service of the master, and where he causes a team crossing a public highway in close proximity to his engine to run

away by negligently and unnecessarily blowing the whistle of his engine as a signal while it is standing still, the railway company is liable for the injury resulting from the wrongful act.

2. REFUSING INSTRUCTIONS—*not error, when same ground covered by general charge, though language different.* Where the court has given general instructions to the jury, fairly stating the law applicable to the case, it is not error to refuse instructions asked covering the same ground though clothed in different language, and, *held*, that no error was committed in giving and refusing instructions in this case.

Error from Smith District Court. Cyrus Heren, Judge. Opinion filed November 5, 1898. *Affirmed.*

*M. A. Low* and *W. F. Evans*, for plaintiff in error.

*H. H. Reed, J. T. Reed* and *D. M. Relihan*, for defendant in error.

ALLEN, J. The petition filed in the trial court by Parks, as plaintiff, alleges in substance that in April, 1894, he was driving a team of horses hitched to a buggy on the highway near the town of Bellaire ; that he approached the track of the defendant railway company from the south, on a road running at right angles to the railroad track ; that there was then standing and moving over the railway crossing a train of cars attached to a locomotive ; that he stopped at a point about 150 feet south of the crossing and remained there for about five minutes ; that the locomotive was then detached from the train and moved east across the public highway to a point about thirty feet east of it ; that while the engine was standing still the plaintiff drove across the track ; that when he had reached a point about forty feet north of the track and while the engine was standing still, and while he was in full view of the engineer and fireman, the engineer, then in the employ of the railway company and there in charge and control of the engine, " then and there needlessly, carelessly and with gross neglect, and with a mis-

chievous and malicious intent to frighten the team of horses of said plaintiff, did cause the steam whistle of said engine to be suddenly and violently blown with useless, unusual and terrifying noise and screeches,'' knowing at the time that the noise would be liable to frighten his team and cause it to run away; that by reason of said misconduct of the engineer and of his gross carelessness he and the servants of the railway company caused plaintiff's horses to become greatly frightened and unmanageable and to run away and throw the plaintiff out of his buggy causing him serious and permanent injuries. To this petition the Railway Company filed the usual answer in such cases,— a general denial, and alleging contributory negligence on the part of the plaintiff. A reply was filed containing a general denial. After the jury had been impaneled and sworn and a witness produced by the plaintiff the defendant objected to the introduction of any testimony on the ground that the petition did not state facts sufficient to constitute a cause of action. This objection was overruled, and the first error assigned is on this ruling of the court.

The question is raised both on the averments of the petition and on the instructions whether the misconduct charged and proven is the personal misconduct of the engineer, for which he alone is liable, or is to be attributed to the Railway Company as his master. It is said that the master can only be made to respond for the misconduct of a servant where that misconduct is connected with the transaction of the business of the master, or in furtherance of his interests or purposes; that when the act is done to gratify the private malice or wanton mischievousness of the servant himself, even though an instrument belonging to the master be used, the latter is not liable for the wrong done. We

1 Railroad Company liable for negligence, when.

shall assume that the rule contended for by counsel for the Railway Company is the law, yet does it avail the plaintiff in error in this case? The petition was not attacked by demurrer but only by objection to the introduction of testimony. It is, therefore, to be liberally construed. It charges that the engineer was employed by the defendant, operating its engine; that he negligently and carelessly, with a mischievous and malicious intent to frighten the plaintiff's team caused the whistle to be suddenly blown. Does this show that the engineer in blowing the whistle performed an act disconnected from the service of the master? He was in charge of his employer's engine on its road, at his post of duty. Sounding the whistle for the purpose of giving signals and warnings was a part of his duty. It was his duty to give such signals to warn people of approaching danger and to refrain from so sounding it when its only purpose would be to induce danger. The use and control of the whistle was as much within the line of his duty as the use of the levers and valves of the engine. We are unable to make a distinction under such circumstances which will disconnect the engineer from the service of the master in the performance of this single act of sounding the whistle. While the averments of the petition possibly might have been made somewhat stronger for the purpose of charging the Railway Company, they appear as definite as is usual where a master is charged with liability for the misconduct of a servant. A further criticism of the petition is made on the ground that it fails to show that the horses ran away as a result of the blowing of the whistle. We find the petition sufficient in this respect. Any one reading it would readily understand that blowing the whistle frightened the horses and caused them to run away. But assuming that the

petition is susceptible of the construction that the engineer acted maliciously in blowing the whistle the testimony wholly fails to sustain any such charge. Taken in its strongest light it merely shows that the whistle was sounded unnecessarily and without regard for the plaintiff's safety.   The evidence of the engineer and fireman tends to show that the engine had started to back across the highway before the plaintiff drove onto the crossing; that the engineer in order to avoid injury to the plaintiff stopped his engine and sounded the whistle.   All the evidence shows that after the plaintiff was thrown from his buggy the engineer and fireman went to his assistance.   No act or expression is called to our attention indicating any malicious or mischievous purposes in the mind of the engineer. The case, therefore, stood before the jury on proof tending to show negligence and carelessness on the part of the engineer in the discharge of his duties.

Part of the first instruction given to the jury is excerpted by counsel and made the basis of a claim of error.   It reads :

"If at the time plaintiff entered upon the track of the railroad the engine was standing still, and if defendant's servants in charge of the engine knew that fact, or if they would have known such fact by the use of ordinary care and prudence, then defendant would be required to use care and prudence, and refrain from making a noise from the blowing of the whistle in a manner calculated to frighten the team driven by plaintiff or cause them to run away ; and if the said defendant's servants did so cause the whistle to be blown, under such circumstances, while plaintiff was acting prudently in attempting to cross said railroad track, and if such noise, caused by the blowing of the whistle, was the cause of the runaway, producing the injuries complained of, or some of them, then plaintiff would be liable to the extent of the injuries caused by such wrongful conduct on the part of the defendant's said servants."

The principal conflict in the testimony was as to the location of the engine at the time the plaintiff crossed the track and whether the engine had been started backward before the whistle was blown, and before the plaintiff had succeeded in crossing. It was the claim of the plaintiff that he was across the track and out of danger when the whistle was sounded, and that the engine had not then been started. On the other hand the train men testified that the engine started backward before the plaintiff reached the crossing. There was nothing in the testimony indicating any other necessity or excuse for sounding the whistle than that of giving warning to the plaintiff. Under the issues and testimony it was not an assumption of the province of the jury for the court to give this part of the instruction as a distinct proposition, but before the quoted part of the instruction we find this language:

"The defendant had a legal right to use its road, engine and cars upon its track in the usual course of business, or in any other manner, so far as pertains to the rights of the plaintiff in this case is concerned, provided in doing so they do not negligently, needlessly and wantonly increase the danger to the plaintiff in passing from a publicly traveled highway across its track."

Immediately preceding the part of the instruction first quoted the following language was used:

"If the defendant's servants while said engine was standing still, knew, or would have known by the exercise of reasonable and ordinary care, which would ordinarily have been used by ordinarily prudent men under like circumstances, that the plaintiff was either upon the track of its railway, or just passing off the same, then the defendant had no right to uselessly or needlessly blow the whistle of the engine, or cause any other noise likely to frighten or cause plaintiff's team to run away."

Immediately following the first excerpt from the instructions the jury were told that if the plaintiff attempted to cross the track when the engine was moving toward the crossing it would constitute negligence on his part, and if the injury resulted wholly, or partially, by reason of his negligence he could not recover. In the third instruction the jury were pointedly told that the only negligence or fault charged against the defendant was in blowing the whistle, and that their investigation should be exclusively directed to the question whether there was negligence in doing so. There can be no question that it is as much the duty of an engineer to refrain from unnecessary acts calculated to frighten teams near his engine as from other acts tending to injure persons or property. While the law requires a whistle to be used for giving signals and expressly requires that it be blown for road crossings, like all other appliances used in the dangerous business of operating railroads it is to be used with care and regard for the rights of others. Although we are not aware that any case has ever been brought to this court before where a recovery of damages was sought for negligently blowing a whistle, the ground on which liability it claimed, is not essentially different from that on which recoveries were sustained in the cases of *Water Co. v. Whiting*, 58 Kan. 640 (50 Pac. 877), and *Railway Co. v. Smith*, ante, p. 80 (52 Pac. 102). In one case the horse was frightened by water rushing from an open hydrant. In the other the plaintiff's horse was frightened by steam from a cylinder steam cock on a locomotive engine.

Under the testimony in the case the court did not err in refusing to give the second instruction asked by the defendant, which was to the effect

2. Refusing instructions not error, when.

that if the engineer maliciously sounded the whistle solely for the purpose of scaring plaintiff's team the plaintiff could not recover.

There is no evidence to sustain a finding of malice on the part of the engineer, therefore no basis for such an instruction. Complaint is also made of the refusal of the court to give various other instructions asked by the defendant. The instructions given fairly covered the whole case, and included in substance so much of the instructions asked as were correct statements of the law.

No error being found on the record, the judgment is affirmed.