## SHEPARD v. UTAH LIGHT & TRACTION CO.

### No. 3247. Decided October 11, 1919. (184 Pac. 542.)

1. APPEAL AND ERROR—ASSIGNMENT OF ERROR ON DIRECTION OF VERDICT. The assignment of error relied on by plaintiff appellant all challenging the action of the court in directing verdict, the question raised on appeal is whether defendant as a matter of law can be held under the facts and circumstances to answer for the damages sustained by plaintiff. (Page 190.)

2. COUNTIES—RIGHT OF COUNTY COMMISSIONERS TO OBSTRUCT HIGHWAYS. The county officials have a lawful right to temporarily obstruct highways under their jurisdiction for purpose of making improvements and repairs, and this right, when properly exercised, is paramount to the right of the public to free and unobstructed travel. (Page 193.)

3. HIGHWAYS—LIABILITY OF TRACTION COMPANY FOR INJURIES DUE TO OBSTRUCTION. A traction company, which pursuant to an order of county officials removed from its track on a county road dirt and rock and dumped the same on the road at a place designated by the county officials, to be used for repair of an intersecting avenue, held not liable for injuries to a traveler due to obstruction caused by the materials, which had then been received and taken charge of by the county, in view of Comp. Laws 1907, section 511, subd. 24, as amended by Laws 1911, chapter 119, section 511x24, and Laws 1909, chapter 118, as to jurisdiction of county commissioners over county roads. (Page 194.)

4. HIGHWAYS—LIABILITY FOR OBSTRUCTION CAUSED BY LAWFUL ACT. While work performed on a public highway in an unlawful manner or for no lawful purpose cannot be justified although performed under direction of authorized officers, a lawful act performed in a lawful way cannot create a nuisance, and does not give rise to an action in tort. (Page 195.)

GIDEON and WEBER, JJ., dissenting.

Appeal from District Court, Third District, Salt Lake County; *J. Louis Brown*, Judge.

Action by Lucile Shepard against the Utah Light & Traction Company, a corporation.

Judgment for defendant, and plaintiff appeals.

AFFIRMED.

*M. E. Wilson*, of Salt Lake City, for appellant.

*Bagley & Ashton*, of Salt Lake City, for respondent.

CORFMAN, C. J.

Plaintiff brought this action to recover damages for personal injuries sustained by her through the alleged negligence of the defendant.

In substance the complaint alleges that on September 1, 1917, the defendant, a street car company, removed from its tracks located on State street, Salt Lake City, several cars of dirt and rock, and unlawfully and wrongfully caused the same to be unloaded upon the traveled portion of said street at or near what is known as Oakland avenue, an avenue extending at right angles westward from said State street; that said dirt was wrongfully and negligently permitted to remain upon said street, where it had been dumped and left, until after the accident complained of, without danger signals or other means being taken to prevent persons traveling upon the street from running into it; that said obstruction prevented persons from operating vehicles upon said highway and from having the free use thereof, and rendered the same dangerous to persons operating vehicles thereon. It is further alleged that on September 2, 1917, at about two o'clock a. m., while the plaintiff was riding on the back seat of a certain motorcycle operated upon said street by one John F. Husbands from Salt Lake City to Murray, said motorcycle ran into and partially over said obstruction, when with great force, the plaintiff was thrown from her seat on the motorcycle to the pavement on said street, and was thereby severely injured, to her damage in the sum of $15,000, for which judgment is prayed.

The answer of the defendant denies negligence on its part, admits the removal of the dirt from the roadbed of its railway tracks on State street, and avers that said dirt so re-

moved by it was by order of the board of commissioners of
Salt Lake county, and was taken charge of by said county on
said State street at a point near Oakland Avenue, to be there
used by said county to rebuild and repair certain roads in
that vicinity. It is also alleged in the answer that the motor-
cycle upon which plaintiff was riding was carelessly and negli-
gently operated, and that the plaintiff was guilty of negligence
which proximately contributed to the injuries complained of
by her while she was engaged in a joint enterprise.

The testimony shows that State street is a public thorough-
fare running north and south between Salt Lake City and
Murray City, upon which at or near the center the defendant
has laid and operates a double-tracked street railway. West
of the defendant's car tracks a sixteen-foot cement pavement
is laid for vehicle travel. Immediately west of this paved
strip there is about twelve or thirteen feet of dirt road, rolled
down and also made available for vehicle travel. Oakland av-
enue is a narrower street than State street, is not paved, and
runs at right angles westerly from State street. It has no
car tracks upon it. Both State street and Oakland avenue are
county roads, within the jurisdiction and under the super-
vision of the officers of Salt Lake county, and embraced in
what is known as road district No. 5. On September 1, 1916,
and for some months prior thereto the officials of Salt Lake
county were engaged in the improvement of both State street
and Oakland avenue. The work was being carried on under
the immediate supervision of William H. Smith, the county
road supervisor of said district No. 5, under the orders and
direction of the county commissioners of Salt Lake county.
On said day, at about twelve o'clock noon, the defendant, pur-
suant to an order made by and under the direction of the said
county officials, removed from its tracks on State street eight
cars of dirt and rock, and hauled and dumped them on said
State street at or near Oakland avenue, at the place desig-
nated by the county officials. As we read the record, as had
been the custom, after the dirt had been dumped by the de-
fendant railway company, the county officials took charge of
the dirt, removed it by teams from the car tracks so as not to

impede the movement of defendant's cars, and then left it upon the paved track for vehicles on State street to be taken away and used by the county for the improvement of Oakland avenue. The dirt or obstruction thus placed and left upon the highway covered the paved portion of State street for a distance of about eleven feet in width, and in height ranged from about fifteen inches at the north end to twenty-seven inches at the south end.

After the dirt had been dumped from defendant's cars and was taken in charge by the county officials, the defendant exercised no further control nor supervision over it. William H. Smith, the county road supervisor, testified:

"I was apprised that the dirt had been delivered as I was going home from town. That was twelve o'clock noon. I shoveled up the loose dirt on the west side and straightened it up. * * * I was going to use the dirt on Oakland avenue for the purpose of grading."

The dirt was left upon the highway rough and uneven, and no warning or danger signals were placed upon it during the daytime of September 1st, nor during the night-time following. The testimony further shows that on all previous occasions when the defendant had hauled material for the county, under direction of county officials, for the improvement of the highways, after delivery of the material, danger signals or lights were placed upon it by the county road supervisor. On September 2, 1917, at about one-thirty o'clock a. m. the morning following the delivery of the dirt, Mrs. Shepard. the plaintiff, at the invitation of a Mr. Husbands, a police officer, mounted and seated herself on the rear seat of a motorcycle at the corner of Second East and Second South streets in Salt Lake City. The motorcycle was then driven by Husbands south on the west side of State street toward Murray as far as Oakland avenue, where they ran into the dirt and rock thus left lying on State street, and were thrown from the motorcycle to the pavement. The plaintiff was seriously injured. The testimony further shows that during the night-time other motor vehicles ran into the same obstruction and were wrecked. The county road supervisor, when asked concerning why he had failed to place lights upon the material

on the particular night in question, testified:

"Q.  On this dirt that has been referred to in this case did you place red lights upon that dirt on the night of the accident?  A. No, sir.  Q.  Why not, Mr. Smith?  A.  I forgot it.  The first time that I forgot such a thing, but I forgot it that night."

The trial of the case was to a jury.  At the conclusion of the testimony defendant moved for a directed verdict, whereupon the court directed, and the jury returned, its verdict, no cause of action.

The assignments of error relied upon by the plaintiff all challenge the action of the court in directing a verdict for the defendant.  The question raised, therefore, on appeal is whether or not the defendant as a matter of law can be held, under the facts and circumstances as disclosed by the testimony, to answer for the damages sustained by the plaintiff in the accident.

This is the second time the case has been presented to this court for review.  The first time by a unanimous court the order was made that the judgment of the district court be affirmed.  Upon application of the plaintiff a rehearing was granted and the case re-argued.  Upon the former hearing the plaintiff made the contention, and still contends, that the act of the defendant in hauling the dirt and dumping it upon the street was wrongful, that it thereby created a public nuisance, and that it must be held to answer in damages to any person who was injured thereby.  In our former opinion we made the statement that—

"Leaving the rock and dirt upon the highway without danger signals or other precautionary methods taken to warn the traveling public of its presence constituted a public nuisance."

We then held that the act of the defendant in dumping the dirt from its cars, under orders from the county officials, for the purpose of improving and repairing the streets, was lawful, and as we then thought clearly pointed out that the wrong committed and the nuisance created was the leaving of the material in the street during the night-time without lights or other danger signals to warn travelers of its presence.  It is the contention of the plaintiff that the hauling and dumping

of the material on the highway by the defendant was not only wrongful, but the leaving of it there unguarded during the night-time following was negligence on the part of the defendant, although it was done as directed by the county officials, and the dirt was afterwards received and taken charge of by the latter. In support of this contention the plaintiff cites us the following authorities: *Bowen* v. *Detroit City Ry. Co.*, 54 Mich. 496, 20 N. W. 559, 52 Am. Rep. 822; *McDonald* v. *Toledo Consol. St. Ry. Co.*, 74 Fed. 104, 20 C. C. A. 322; *Brady* v. *Public Service Ry. Co.*, 80 N. J. Law, 471, 79 Atl. 287; *Dixon* v. *Brooklyn Ry. Co.*, 100 N. Y. 170, 3 N. E. 65; *Houston & T. C. Co.* v. *Lackey*, 12 Tex. Civ. App. 229, 33 S. W. 768; *Wilson* v. *West & Slade Mill Co.*, 28 Wash. 312, 68 Pac. 716; *Solberg* v. *Schlosser*, 20 N. D. 307, 127 N. W. 91, 30 L. R. A. (N. S.) 1111; 29 Cyc. 1201; Wood, Nuisances, section 875; *Morris* v. *Salt Lake City*, 35 Utah, 474, 101 Pac. 373; 13 R. C. L. section 190, p. 224; *Frank Bembe* v. *Commissioners of Anne Arundel Co.*, 94 Md. 321, 51 Atl. 179, 57 L. R. A. 279; *Hartford County* v. *Wise*, 71 Md. 52, 18 Atl. 31; *Ray* v. *Manhattan L. H. & P. Co.*, 92 Minn. 101, 99 N. W. 782; *Circleville* v. *Neuding*, 41 Ohio St. 465; *Philadelphia Coal Co.* v. *Barrie*, 179 Fed. 50, 102 C. C. A. 618; *Gillis* v. *Cambridge Gas Light Co.*, 202 Mass. 222, 88 N. E. 779; *City of Portland* v. *Richardson*, 54 Me. 46, 89 Am. Dec. 720; *Congreve* v. *Smith*, 18 N. Y. 79; *Congreve* v. *Morgan*, 18 N. Y. 84, 72 Am. Dec. 495; *Irvine* v. *Wood*, 51 N. Y. 224, 10 Am. Rep. 603; *Robinson* v. *Mills*, 25 Mont. 391, 65 Pac. 114; *Shreve* v. *City of Ft. Wayne*, 176 Ind. 347, 96 N. E. 7; *Brooks* v. *City of Atlanta*, 1 Ga. App. 678, 57 S. E. 1081; Elliott, Roads and Streets (2d Ed.) section 648; *Callanan* v. *Gilman*, 107 N. Y. 360, 14 N. E. 264, 1 Am. St. Rep. 831; 13 R. C. L. p. 219, section 185; *Triay* v. *Richard Canal Co.*, 172 App. Div. 615, 158 N. Y. Supp. 739; *Elam* v. *City of Mt. Sterling*, 132 Ky. 657, 117 S. W. 250, 20 L. R. A. (N. S.) 512; *City of Louisville* v. *Tompkins*, (Ky.) 122 S. W. 174; *Dunlap* v. *Raleigh*, 167 N. C. 669, 83 S. E. 703; *Thornton* v. *Dow*, 60 Wash. 622, 111 Pac. 899, 32 L. R. A. (N. S.) 968; *First Presbyterian Cong.* v. *Smith*, 163 Pa. 561, 30 Atl. 279, 26 L. R. A. 504, 43 Am. St.

Rep. 808; 1 Mechem on Agency, sections 1451, 1452; *Ellis* v. *McNaughton,* 76 Mich. 237, 42 N. W. 1113, 15 Am. St. Rep. 308; *Baird* v. *Shipman,* 132 Ill. 16, 23 N. E. 384, 7 L. R. A. 128, 22 Am. St. Rep. 504; *Devlin* v. *Smith,* 89 N. Y. 470, 42 Am. Rep. 311; *Penn. Steel Co.* v. *Elmore* (C. C.) 175 Fed. 176; *O'Brien* v. *American Bridge Co.,* 110 Minn. 364, 125 N. W. 1012, 32 L. R. A. (N. S.) 980, 136 Am. St. Rep. 503; *Clifford* v. *Dam,* 81 N. Y. 52; 15 A. & E. Ency. Law, 501; *McDermott* v. *Conley,* 11 N. Y. Supp. 403[1]; *Hawver* v. *Whalen,* 49 Ohio St. 69, 29 N. E. 1049, 14 L. R. A. 828; *Bennett* v. *Lovell,* 12 R. I. 166, 34 Am. Rep. 628; *Ayer* v. *Norwich,* 39 Conn. 376, 12 Am. Rep. 396; *Topeka Water Co.* v. *Whiting,* 58 Kan. 639, 50 Pac. 877, 39 L. R. A. 90; *Swords* v. *Edgar,* 59 N. Y. 28, 17 Am. Rep. 295; *Lydecker* v. *Board of Chosen Freeholders,* 91 N. J. Law, 622, 103 Atl. 251, L. R. A. 1918D, 351; Comp. Laws Utah, sections 2840, 2845, 2520, 2823, 2735, 7240, and 2185.

[a] Reported in full in the New York Supplement; reported as a memorandum decision without opinion in 58 Hun, 602.

The cases cited shed very little light on the questions involved in this action. All of these authorities announce and adhere to the well-established doctrine that one who wrongfully places or leaves an obstruction in a highway becomes liable to the persons sustaining injuries thereby. No criticism is to be made of the authorities cited and the principles announced by them, for they deal with unlawful acts and the liability of persons committing them, as contradistinguished from lawful acts committed in a lawful manner.

We held in our former opinion in this case that the acts of the defendant were lawful in removing the dirt from its roadbed and hauling and dumping it from its cars on the highway by direction of the county officials to be used for the improvement and repair of streets within the jurisdiction and under the supervision of the latter; that these acts of the defendant were not only lawful, but were performed in a lawful manner. Plaintiff did not before, nor does she now, cite us to a single authority holding that where the facts and circumstances are like or similar to those in the case we have under considera-

tion here, in which negligence was held to be established and the defendant required to respond in damages.

By subdivision 24 of section 511, Comp. Laws Utah 1907, as amended by Laws Utah 1911, section 511x, p. 198, it is provided that the board of county commissioners shall have jurisdiction over the county roads, and the following powers:

"To lay out, maintain, control, erect, and manage public roads, turnpikes, ferries and bridges within the county outside of the incorporated cities. * * *"

By chapter 118 of Laws Utah 1909, entitled "Powers of county commissioners as to roads," it is provided:

"Sec. 1. Each board of county commissioners shall by proper regulations: 1. Appoint a county road commissioner. * * * 2. Cause to be * * * maintained and worked such public roads as are necessary for public convenience."

"Sec. 4. The county road commissioner, under the direction and supervision of the board of county commissioners, shall: 1. Take charge of the public roads within the county, and employ and direct such competent help as may be necessary to properly perform his duties. * * * 4. Keep the roads clean of obstructions and in good repair. 5. Cause the roads to be graded * * * and keep the same in repair and renew them when necessary."

The county officials have the lawful right to temporarily obstruct the highways under their jurisdiction for the purpose of making improvements and repairs, and this right, when properly exercised, is always paramount to the right of the public in them for free and unobstructed travel. *Phelan* v. *Granite Bituminous Paving Co.*, 227 Mo. 666, 127 S. W. 318, 137 Am. St. Rep. 603; R. C. L. title "Highways," section 188; *Pinnix* v. *City of Durham*, 130 N. C. 360, 41 S. E. 932, 933; *Lund* v. *St. P., etc., Ry.*, 31 Wash. 286, 71 Pac. 1032, 61 L. R. A. 506, 96 Am. St. Rep. 906; *Stern* v. *Spokane*, 73 Wash. 118, 131 Pac. 476, 46 L. R. A. (N. S.) 620.

In the case before us the testimony clearly shows that the only acts the defendant was engaged in were the taking of the material from its roadbed, hauling and delivering it on State street to be received, taken, and used for the improvement of the public roads under the jurisdiction of county officials duly authorized and charged with the duty of supervis-

ing and keeping them in proper repair. The delivery of the material by the defendant at the time and place where it was delivered was not negligence per se. The only wrong that contributed to the plaintiff's injuries, and the only negligence of which she has any right to complain, was the neglect of the county in leaving the material on the highway during the night-time unguarded, without warning signals or other means of apprising the public of its presence in the street. The duty of safeguarding the public after the defendant had removed the material from its roadway and had hauled and dumped it from its cars in a lawful manner and it had been received and taken charge of by the county for a lawful purpose devolved upon the county. Further, the testimony is clear that after the material was dumped from the defendant's cars defendant had no further control or supervision over it. It necessarily follows that if the defendant delivered it in a lawful way and at a lawful place, and it was then received and taken charge of by the county, the responsibility of the defendant ended. Moreover, after the county had thus received and taken charge of the material the defendant would have no legal right to control it or exercise dominion over it even had it assumed to do so.

On principle we are unable to distinguish between a street car company delivering material to the legally authorized county officials directly engaged in the repair and improvement of the county highways within their jurisdiction (upon whom rests the statutory duty to ''take charge of public roads'' and ''keep the roads clear of obstruction and in good repair'') and the laborer who performs his work in a lawful manner or the merchant or materialman furnishing and delivering tools and material in a lawful way for the improvement of the public highways. Throughout this state at the present time thousands of men are employed in digging and plowing up the highways; many teamsters are engaged in hauling and delivering sand, rock, cement and other materials upon them; machinery and other equipment are being sold and delivered by merchants at points designated, all to be used in and for the improvement of the public roads. This

work is being officially directed by the respective city, county, and state officials who determine when, where, and how the work is to be performed and the materials and equipment furnished. If the employés complete their work in a lawful way and it is afterwards received and taken charge of by their employers, upon what logical basis may the former be held responsible for the injuries occasioned to the traveling public in cases of accident through failure or neglect of their employers to seasonably remove it from the highways or in leaving it and failing to place warning signals upon it, or to make lawful use of it thereafter? There is no principle of law that permits of penalizing lawful conduct. To hold the employés responsible to third parties for injuries received by them through the neglect and failure of their employers after the relationship of employer and employé has terminated would be, in our judgment, neither sound law, correct in principle, nor calculated to promote justice.

We do not wish to be understood as holding, nor do we hold, that work performed on the public highways is an unlawful manner or for no lawful purpose is to be justified in the law, although performed under the direction of authorized officials. What we do hold is that a lawful act performed in a lawful way cannot create a nuisance, nor will it give rise to an action in tort. The hauling and delivery of the dirt in the street were performed in a lawful way, and these acts of the defendant most certainly should not be held a nuisance.

But the plaintiff strenuously contends that the act of the defendant in delivering material on State street to be used on Oakland avenue was a wrongful act; that while it is permissible under the law to temporarily obstruct the highways for the purpose of making improvements and repairs the rule cannot be extended so as to permit the depositing of materials on one highway for the improvement of another. No case in which this question was directly before the court is cited in plaintiff's brief. The case cited (*Louisville* v. *Tompkins*, supra), upon which plaintiff seems to rely, announces the doctrine, but in that case the question was not properly raised,

and was not before the Kentucky court to pass upon. We need not therefore regard that case as a precedent. However, let it be conceded, without our deciding it, that the rule contended for by plaintiff, generally speaking, is a proper one, yet it should not be invoked nor followed in a case in which there is no sound reason to be assigned for doing so. We do not think the rule should be applied in any event in the case before us. State street and Oakland avenue, as pointed out in the testimony, were in the same road district and under the control and supervision of the same county officials. The testimony further shows that both of these highways at the time of the accident to the plaintiff were being improved at the same time by the taking of material from State street to be used in the grading of Oakland avenue. State street was a wide street traversed by the defendant's railway, which afforded the very best facilities for the removal of the dirt from its roadway and hauling it to a point on State street where it could be taken and used for the improvement of Oakland avenue. Oakland avenue was a narrow street, without railway trackage intersecting State street. Under these circumstances and conditions we are not prepared to say that the depositing of the dirt on State street to be taken and used by the county officials on Oakland avenue constituted a public nuisance, or that the placing of it there was unlawful in its inception. We think, under the circumstances, it was not only the most practicable and feasible way of hauling the material, but that the county officials who were charged with the statutory duty of improving these streets exercised good judgment in having the dirt hauled and placed on State street at a point where it was available for taking and using it for the improvement of Oakland avenue. Moreover, the county officials had the lawful right to temporarily leave the material upon State street for the purposes for which it was to be used on Oakland avenue. The wrong committed was the leaving of the material during the night-time upon the highway by the county after it had been rightfully received at the hands of the defendant without placing danger signals upon it. The dirt on the highway did not become a nuisance by any act or omission of the de-

fendant, nor while the defendant had any power or control over it.

We have carefully considered the many cases to which we are cited by plaintiff's brief, but we have not paused to discuss them for the reason that the principles of law they announce are applied to facts and circumstances entirely different from those we have under consideration in the case at bar. After carefully reviewing the authorities cited and the principles of law they announce, we feel convinced that they cannot properly be applied to the facts and circumstances of the case at bar and under which the plaintiff seeks to recover damages at the hands of the defendant.

It therefore follows that the order of the district court directing a verdict for the defendant was right, and the judgment entered thereon should be affirmed, with costs to defendant. It is so ordered. It is further ordered that the foregoing opinion be substituted for the former opinion hereinbefore referred to, and this opinion shall be the opinion officially published.

THURMAN, J., concurs.

FRICK, J.

After considerable hesitation, and, I may say, with some reluctance, I am forced to the conclusion that the Chief Justice is right. In concurring in the former opinion I did so upon the sole ground that, the county being immune, therefore the defendant was likewise so. I am now convinced that my conclusion in that regard was erroneous, and that the immunity of the county afforded the defendant no protection if it, as a matter of law, can be held liable. The difficulty that confronts me, however, is to find authority in law for holding the defendant liable. It is quite true that the law is well settled that "an individual who erects *an unlawful obstruction* to the free use of a highway, in its nature a nuisance, *by reason of his wrongful act* is charged in law as an insurer against accident to a person properly traveling the highway

and meeting injury by reason of such unlawful obstruction. * * * But where the highway is obstructed under license and by authority, the person responsible for such obstruction is chargeable only with ordinary care to see that such obstruction does not become a cause of injury to any person lawfully traveling the highway." (Italics mine.) *Stockton Automobile Co.* v. *Confer*, 154 Cal. 405, 97 Pac. 883. It is manifest that the defendant does not come within the first sentence of the foregoing quotation. Its act in depositing the dirt on the traveled portion of the highway was not an unlawful act. That, it seems to me, is too clear to require argument. Does it come within the second sentence? For a long time I was under the impression that it did. Upon careful reflection and consideration, however, I was forced to abandon that impression also. Had the defendant been engaged in improving or repairing the highway as an independent contractor it no doubt would come within the proposition of law stated in the second sentence before quoted. It was, however, merely acting as the instrumentality of the county in depositing the dirt, and was therefore not "responsible for such obstruction." Moreover, the dirt was deposited for a lawful purpose and at a place the county officials had a right to have it deposited for the purpose of improving or repairing that or any other highway in the immediate vicinity. There was therefore nothing unlawful in defendant's act. Nor did such act in any way invade any rights of the plaintiff. While it is true that in the absence of any warning the plaintiff had the right to assume that the highway was free from obstructions, yet it is also true that the county officials had a legal right to deposit the dirt thereon for the purpose of repairing or improving the same or any other highway in the immediate vicinity. In doing that, however, it became the duty of the county official who was in charge of the work to withdraw either the whole or, at least, a portion of the highway from travel so as not to mislead the traveling public. In this instance a signal or warning sign sufficient to apprise the traveler of the obstruction would have been a compliance with the duty that the law imposed. The accident in this case was due

entirely to the failure to warn the plaintiff of the obstruction. That failure, therefore, was the proximate cause of plaintiff's injury. In view that the county had the lawful right to direct the defendant to deposit the dirt, and that the defendant's acts were lawful in doing so, and that it was not the act of depositing the dirt, but the failure to put up a signal or warning sign, which was the cause of plaintiff's injury, I cannot see how the defendant's act in depositing the dirt can be said to be the proximate cause of the injury. If in this case the county were not immune no one would for a moment hesitate to say that if any one is liable it is the county. In view that the acts of the defendant in depositing the dirt were lawful, it, as I view it, becomes entirely immaterial whether the county is immune or not. The mere fact that the county cannot be sued affords no excuse to the officer upon whom the law imposed the duty of putting up a warning signal or sign in case he was required to leave the dirt upon the traveled portion of the highway longer than he had expected. Had the defendant's act in depositing the dirt been for its own convenience in repairing the highway it would have been its duty to see that proper signals or warning signs were put up to warn the traveler against the obstruction. The dirt was, however, deposited for the convenience of the county and upon the direction of the official in charge of the work, and was lawfully deposited. I therefore cannot see how the defendant can be said to be a wrongdoer in any particular. Under the circumstances the defendant could not have withdrawn the highway from travel. It had no authority over it whatever. To do that was the duty of the county official who directed the work. He failed to do so, and hence his act of omission lies nearest the injury. His omission was in no way connected with the defendant's act in depositing the dirt in the first instance, but was an independent intervening act. I concur, therefore, upon the sole ground that in this case the defendant's acts were no different than would have been the act of any other employé of the county who was directed by the officer in charge of the work to deposit the dirt at the place it was deposited, and that it was not the duty of such employé to put up signals or warning signs.

GIDEON, J. (dissenting).

The controlling question for determination in this case, as I view it, is: Did the county commissioners of Salt Lake county, as the custodians of the public highways in said county, have the lawful right to direct the defendant company to dump dirt from its cars upon State street to be used in the repair of Oakland avenue, a street running at right angles with said State street?

I concurred in the former opinion affirming the judgment of the district court with some doubt as to the correctness of the conclusions reached. After the reargument and a further examination of the authorities, and of the principles which, in my judgment are involved, I am convinced that the former decision ought not to stand as the law of this case.

It is conceded that the county commissioners of this state have control of the public highways in their respective counties. The purpose of the law delegating that authority and duty is that some public officer or commission shall be charged with the duty of keeping the highways in repair for the public convenience and travel. It may also be admitted as a legal proposition that the county commissioners have the right to temporarily obstruct any highway for the purpose of making public improvements and all needed repairs. Otherwise the very object sought by granting the power would be defeated, namely, the duty to keep the highways suitable for travel. Keeping in mind the purpose for which highways are constructed and kept in repair, namely, for the safety and convenience of the public traveling on said highways, it must logically follow that public officers charged with the duty of keeping such highways in repair, in the performance of that duty, must so perform their respective duties as not to trespass upon or interfere with the rights of the public to any greater extent than is absolutely necessary for such improvements. Repairing highways is a duty imposed by law, and no right exists in a public official to obstruct a highway except as the same is necessary to perform the duty of repairing such highway. No one will contend that it was absolutely neces-

sary to dump the dirt in question upon State street for the repair of Oakland avenue. True, it was probably more convenient, but an absolute necessity did not exist. That, in my judgment, is the error of the majority opinion. The right of the plaintiff to travel upon State street and to assume that it would be reasonably safe for travel is made subservient to the convenience of the commissioners in the performance of their duty to repair Oakland avenue.

It is admitted that the dirt dumped by the defendant company from its cars upon State street was not to be used for the repair of that street, but was to be used in repairing Oakland avenue, and that fact was known to the company at the time. It is not contended that the defendant company had any right to deposit the dirt on said street except by and under the arrangement with the county commissioners who assumed to grant it such right. If the commissioners were not lawfully exercising a power vested in them, then the defendant company, by throwing the dirt upon such street along a part of the street used by the public, was thereby acting without lawful authority. If such be the fact I can see no escape from the conclusion that of necessity the defendant company would be liable for any injury caused by such obstruction to any one traveling upon that highway, unless such injury resulted from some act of negligence of the party injured or some other person for whose conduct or acts such injured person is responsible. If the county commissioners were not lawfully exercising their authority in so obstructing State street, then it must follow that the defendant company was not doing a lawful act at the time it unloaded the dirt upon that street. The commissioners being without right or legal authority to so obstruct the street, it necessarily follows that the agent directed by such principal cannot justify its acts and absolve itself from liability by relying upon and pleading the unauthorized act of the party or person who directed such unlawful act. 1 Mechem, Agency (2d Ed.) section 1455; *Baird* v. *Shipman*, 132 Ill. 16, 23 N. E. 384, 7 L. R. A. 128, 22 Am. St. Rep. 504; *Ellis* v. *McNaughton*, 76 Mich. 237, 42 N. W. 1113, 15 Am. St. Rep. 308; note 32 L. R. A. (N. S.) 972.

The county commissioners, in my judgment, in directing and authorizing the defendant company to unload its cars on State street, were violating one of their primary and fundamental duties. That is, they were obstructing a public traveled street without any justification or legal right so to do. State street was not to be repaired, and, as far as shown by the record, that particular place was not required to be repaired for the public convenience.

The authorities relied on by respondent do not, in my judgment, justify or support its contention. The authorities cited simply announce the general rule that public officials have the right to make needed repairs and for that purpose to obstruct a highway even at the inconvenience of the public. No one disputes that proposition. As pointed out, that would simply be performing a public duty. No authority is cited holding a defendant free from liability under facts similar to the facts shown in this case.

The authorities relied on by appellant possibly do not discuss facts similar to the facts involved here. In *City of Louisville* v. *Tompkins* (Ky.) 122 S. W. 174, the court seems to have accepted as elementary the rule that the public officials have no right to place material on one street or highway to be used in repairing another street or highway. In principle, in my judgment, that must be so. The officials are required to keep the highways free from obstruction so as not to interfere with the convenience of the traveling public, and the only exception to that rule is when it is necessary to close or obstruct a highway while making needed repairs or making public improvements.

I am unable to follow the reasoning whereby it is concluded that by depositing the dirt upon State street the defendant company did not invade the rights of the public, including plaintiff. The highway was there, and the plaintiff had the right to travel it and to assume that it was in a reasonably safe condition for travel. By the defendant's acts the highway was rendered dangerous. Now, how can it be said that the plaintiff's rights were not invaded? The defendant does not, as I understand its position, so contend. It claims only

that it acted under direction of the officials having control of the highway, and for that reason it cannot be held liable for the injury which resulted, not that its acts were not an invasion of plaintiff's rights.

It is also claimed that to hold the defendant company liable under the facts as disclosed by this record would of necessity make any one liable, even an ordinary teamster who might haul a load of sand and dump it upon the street in front of some citizen's residence when he was directed to so do by the owner of the property whose property or sidewalk was to be repaired, for which purpose the sand was to be used. Conceding that such would be the result, is there any logical reason why a teamster who, without authority, invades the rights of another and injury results should be held free from liability?

The right of the plaintiff to travel upon the highway when the injury occurred cannot be and is not disputed. That right was invaded or obstructed by the dirt thrown upon the highway by the defendant company. The justification for such trespass is, in my opinion, based on an unauthorized and illegal act of a public official. That ought not to be held a defense. State street is the main public highway running south from Salt Lake City to Murray City and other towns in the southern part of Salt Lake county. There are many other highways intersecting it from the east and west. To apply the results of the majority opinion to the facts as they exist would give the defendant company and the county officials the right to dump materials on State street for the improvement of all intersecting streets along defendant's line of railway on State street. In other words, respondent and the county officials could rightfully and lawfully use State street between the southern limits of Salt Lake City and the southern boundary of the county as a station or dumping ground from which to haul material to all parts of the county, however remote.

In *Wilson* v. *West & Slade Mill Co.*, 28 Wash. 312, 68 Pac. 716, the Supreme Court of Washington has stated the rule of law governing the duty and liability of parties obstructing a

highway under circumstances similar to those in the case at bar in the following language:

"One who, by himself, or jointly with another or others, places an obstruction in a public street, is in law under an obligation to remove it, and is liable for any damage occasioned thereby during the continuance of the obstruction. The fact that he may have no interest in its maintenance after its creation does not relieve him from such liability."

See, also, 13 R. C. L. p. 224, section 190.

In my opinion the judgment of the lower court in this case should be reversed, and a new trial granted. I therefore dissent.

WEBER, J., concurs with GIDEON, J.