VIOLET GRAB, AN INFANT, BY HER NEXT FRIEND, LENA GRAB (PLAINTIFF), RESPONDENT, v. DAVIS CONSTRUCTION COMPANY (DEFENDANT), APPELLANT.—109 S. W. (2d) 882.

St. Louis Court of Appeals. Opinion filed November 2, 1937.

Motion for rehearing overruled November 19, 1937.

Writ of certiorari denied February 25, 1938.

*W. A. Brookshire* for appellant.

*Reardon & Lyng, John H. Martin* and *Raymond S. Roberts* for respondent.

HOSTETTER, P. J.—This is an action for damages on account of personal injuries sustained by plaintiff, Violet Grab, the ten year old daughter of Otto Grab, who was driving a Model T Ford on Highway #61 in the vicinity of Beck in Jefferson County, Missouri, on the 16th day of March, 1935, with his daughter as a passenger at the time of the reception of her injuries.

The suit was brought in the Circuit Court of St. Francois County on October 8, 1935, and was tried to a jury on the 19th and 20th of December, 1935, resulting in a verdict in favor of plaintiff for $5000, on which judgment was rendered on the last mentioned date.

W. C. Huff, the driver of one of the cars involved in the collision in which plaintiff was injured, was originally a defendant, but, under the instructions of the trial court was held not liable.

The auto in which plaintiff was riding northwardly skidded on the mud covered highway and collided with the car driven by W. C. Huff, which was traveling southwardly. The accidental collision occurred between the Frisco railroad underpass and a small stream known as Plum Creek.

At the time and place of the accident the defendant, Davis Construction Company, was engaged in repairing and reconstructing the highway at this point under a contract with the State Highway Commission. The principal work at this point consisted of putting in a new section of twenty foot concrete slab about ten feet east of the old highway. This involved a widening of the highway at and on either side of the scene of the accident.

Defendant was making a fill on the east side of the old slab, on which to lay the new, between the Creek and the underpass. The dirt with which to make the fill was obtained from a pit on the west side of the old slab. The highway was, at all times, kept open for traffic, and the traffic was using the old section of the highway. At this particular time they were hauling dirt to put in a fill for the new section of highway. They hauled this dirt by means of trucks from a point north of where the accident occurred to a point south thereof. These trucks, in going from the pits where they obtained the dirt to the fill, used the old section of the highway for some distance, and would cross over to the fill. During this operation, dirt would fall from the trucks, also from the wheels of the trucks. This dirt falling from the trucks formed a coating or stratum on the sur-

face of the roadway. It had been raining on the date of this accident, and the highway at the point of the accident was shown to be slick and slippery.

The plaintiff's father testified that when he was about thirty or forty feet north of the underpass his car started sliding; that he put on the brake and killed the motor, and tried every way he could to stop, but his car kept on skidding until it struck the Huff automobile. He also testified that he did not see any mud on the highway until he began to slip and slide.

It was shown that the distance between the railroad underpass and Plum Creek, is 586 feet and that the accident occurred approximately 200 feet south of Plum Creek.

W. C. Huff testified that when he first saw the car in which the plaintiff was riding it was approximately 200 feet north of the underpass and was then skidding and slipping, and remained out ·of control until the accident happened; that as he approached the bridge over Plum Creek he felt the rear end of his car skidding, and took his foot off the brake and just coasted, edging toward the side of the pavement onto the shoulder of the highway, where he was when the collision occurred; that when he got out of his automobile and stepped onto the pavement he had difficulty in keeping his footing due to the mud and the slippery condition of the highway.

Plaintiff Violet Grab was thrown out of the car by the impact. She was picked up and taken to a doctor in Imperial, and later to the Firmin Desloge Hospital in St. Louis, where she remained ten days. At the time of the trial she had five scars on her face, one of which extended downward over the right eye, and into the eyelid, causing a pull of the muscle of this eyelid, and the eye could not be closed properly. One of the other scars was in the middle of the chin and extended through to the mucous lining of the lower lip. Another scar extended from the middle of the lower right eyelid downward into the cheek. On the left side of her face was another scar, to the left of the corner of her left eye, and this extended downward across the middle of the left cheek. She was also found to be nervous and underweight, and complained of pain in her back between the shoulder blades. She was still under the doctor's care at the time of the trial some nine months after the accident. The evidence further showed that these scars were permanent, and that the scar on the right eyelid interfered with the function of the eye. In fact, she was not able to close it properly, which subjected the eye to reception of foreign bodies; and there was testimony to the effect that this was a permanent condition, and would continue to interfere with the function of the eye; that the only proper treatment was plastic surgery, and that this could not be guaranteed; and that her nervousness was reasonably certain to continue in the future.

The defendant introduced evidence to the effect that the highway was scraped by a 12 foot blade, and that the road was free from dirt or mud; that this was the usual and approved method of keeping the highway clear, and was the only method known to be used, except to use shovels and clean it by hand; that the work was done under a contract with the State Highway Department, and that there were signs along the road informing the public of the fact that the road was under construction; that there were no signs to the effect that the highway was slippery, when wet, and no persons placed there to give a warning.

Dr. E. C. Funsch of St. Louis testified on behalf of defendant that he examined the plaintiff a few days before the trial, and found the same five scars as described by the plaintiff's physician; that she complained of pain in her back and he took X-rays. He examined her nervous system and took into consideration what her mother said, that the child was nervous and at times her sleep was disturbed; that she was particularly nervous when she rode in an automobile; that taking into consideration the fact that her reflexes were somewhat more active than normal, he thought the child did have some nervousness, which was a result of the accident; that the scars were a permanent condition; that the scar on the eyelid had some pulling effect, and the child's mother said she didn't completely close the eye when she slept, which he believed to be true.

At the conclusion of the testimony the court refused the instruction tendered by defendant in the nature of a demurrer to the evidence and gave two instructions at the request of plaintiff, and four instructions at the request of defendant.

Following the overruling of defendant's motion for a new trial and its motion in arrest of judgment, it brings the cause to this court by appeal for review.

It is urged by defendant that the trial court erred in refusing its proffered instruction in the nature of a demurrer to the evidence, offered at the close of the testimony.

It is a well settled rule that in considering such a demurrer the testimony in favor of plaintiff's theory of the case should be deemed true, and, where there is a conflict in the testimony, that which is favorable to the plaintiff should be accepted as true and testimony adduced by defendant which favors plaintiff's theory of the case should be considered in favor of plaintiff and that plaintiff is entitled to all reasonable and legitimate inferences from the testimony adduced. Tested by these rules we think the trial court correctly ruled on the proffered instruction.

But defendant urges that the warning signs of "men working," "slow," "caution," made it obligatory on the trial court to give the proffered instruction. We cannot agree to this contention. Plaintiff and her father had passed over this part of the highway going

southwardly in safety in the forenoon of the same day. There were no signs displayed which told the traveling public of "mud being on the highway making it slippery and dangerous." Of course, there is always some slight element of danger to the traveling public in passing over a stretch of highway under repairs where men are working, but where the work is of such a nature and the weather conditions such as to cause the pavement to become muddy and slippery, the danger is vastly augmented. It cannot be said that the automobilist who essays to travel over such portion of a public highway is negligent in doing so, to the extent that he or a guest in his car would be barred from a right to recover in the event of injury received, in merely exercising his lawful right to use the public highways. A duty rests on the repairer to use ordinary and reasonable care to keep the highway safe for public travel, and the traveling public has a right to rely on such duty being observed by the repairer.

It could hardly be seriously contended that, even assuming that plaintiff's father was negligent in attempting to use the highway at the time and place of the accident, that such negligence could be imputed to his ten year old child so as to defeat her right to recover in this action. We think the trial court did not err in refusing the demurrer.

Error is claimed because the trial court permitted plaintiff's counsel to show by Edgar L. Barnett, field superintendent of the Davis Construction Company (who was called as a witness for plaintiff), that the blade was used on the highway immediately after the accident. We think this claim is without merit.

It was conceded by this witness that the use of the blade did not remove all the mud from the pavement, but left a "thin scum" of mud anyway. It is the contention of plaintiff's counsel that it was proper to prove the use of the blade immediately after the accident, as tending to show that its use prior to the accident was not effective and did not remove the mud. The witness (Mr. Barnett) being cross examined by defendant's counsel, stated that the two cars damaged in the collision were on the pavement obstructing traffic and they used the tractor, after unhooking it from the blade, and pulled the two cars off the pavement onto the new fill, and, in doing so, there was more dirt left and some glass which should be removed.

There was nothing whatever in this incident which could affect the merits of the controversy.

Error is also claimed in the alleged admission of hospital records. Section 9056, Revised Statutes Missouri, 1929 (Mo. Stat. Ann., Sec. 9056, p. 4196), prescribes the extent to which hospital records may be used. There is no substance in this contention for the very good reason that the record shows that plaintiff's counsel read extracts

from the hospital records which were subsequently ruled incompetent by the court and the jury instructed to disregard the matters thus stricken out.

The gravamen of defendant's objections was that the matter sought to be introduced was from a document not shown to be an authentic record of the Firmin Desloge Hospital. The court overruled defendant's contention on this point, but struck out the last two portions read by counsel for plaintiff, and announced that the gross findings would be admitted and again advised the jury to pay no attention to the stricken matters.

As we interpret the record, the only thing left of the hospital readings was a note indicating that on March 22nd one-sixteenth of a grain of morphine was given, and, this being such an infinitesimal amount, we cannot believe it would harm the patient, or the rights of the defendant in this suit.

The plaintiff's counsel then excepted to the ruling of the court, and, as if seeking to avoid a complete "water haul" expressed a desire to show from the hospital records "the discharge note of March 26th, 1933." This was met with such a spirited objection by defendant's counsel that plaintiff's counsel, apparently beaten and baffled, somewhat wearily announced as follows: "I won't show the discharge record. That may be withdrawn." Thereupon defendant's counsel sought to have the court reprimand plaintiff's counsel for framing his questions so as to get facts before the jury, then withdrawing them. The trial court stated that he thought it was done in good faith, and again admonished the jury to pay no attention to anything withdrawn. So endeth the labored, but abortive effort to get any hospital news in evidence, save the administration of a one-sixteenth grain of morphine to the patient. We rule this assignment of error against defendant.

Error is claimed in giving plaintiff's Instruction No. 1, which is as follows:

"The Court instructs the jury that if you find and believe from the evidence that on the occasion in question the defendant, Davis Construction Company, was engaged in repairing and construction of a portion of highway No. 61 at the place mentioned in the evidence and that in the course of its said work said defendant did cause said highway to become covered with mud, if you so find, and did thereby cause the traveled portion of said highway to become slick and slippery, dangerous and not reasonably safe for travel, if you so find, and that said highway at the point mentioned in evidence was an open and public highway of the State of Missouri, if you so find, and if you further find from the evidence that plaintiff at the time mentioned in evidence was a passenger in an automobile being driven over and along said highway at said point, and if you further find that while said automobile in which plaintiff was riding was be-

ing driven along said highway and at or near the place mentioned in evidence said automobile with plaintiff therein, did skid and slide upon the aforesaid slick and slippery substance on the highway there, and did come into collision with another automobile, if you so find, and plaintiff was caused thereby to sustain injuries, if you so find, and if you further find from the evidence that said slick, slimy and slippery substance upon the highway there, if you so find, did render the said highway unsafe and dangerous and not reasonably safe for use and travel, and if you further find that the defendant, Davis Construction Company, or its agents and servants, knew or by the exercise of ordinary care could have known of the aforesaid conditions if you do so find, in time thereafter by the exercise of ordinary care to have remedied said conditions, if you so find, but that defendant, its agents and servants, did fail to remedy said conditions, if you do so find, and that in thus failing, if you do so find, defendant, Davis Construction Company, did fail to exercise ordinary care and was guilty of negligence, and that plaintiff was injured as a direct and proximate result thereof, if you do so find, and that plaintiff was exercising ordinary care for her own safety; then your verdict must be in favor of the plaintiff and against defendant, Davis Construction Company.''

The court, at defendant's request, gave the following instructions, viz:

## No. 3.

''You are instructed that the defendant, the Davis Construction Company, was not an insurer against injuries to travelers and motorists upon the portion of the Highway which the testimony shows said defendant was under contract with the State Highway Department to repair and construct, but that said defendant was required to use only ordinary care to keep said Highway safe for public travel. Therefore, if you find and believe from the testimony adduced in this case, that said defendant employed the same methods and machinery and exercised the same degree of care that an ordinary prudent person would have used and exercised under the same or similar circumstances, then your verdict should be for the said defendant.''

## No. 4.

''You are instructed that in determining whether or not the Davis Construction Company exercised ordinary care in repairing and constructing the portion of the highway mentioned in the evidence, you will take into consideration the weather, the conditions under which said defendant was required to work, the equipment and machinery used, and the methods employed for repairing and constructing of said highway; and if, after a consideration of all the facts and circumstances in evidence, you find and believe that the said defend-

ant employed the same methods and the same type of machinery and exercised the same degree of care in the use of the same that an ordinary prudent person would have used under the same or similar circumstances, your verdict will be for said defendant." (This instruction was amended by the court by striking out the words "or contractor" after the words "prudent person.")

No. 5.

"You are instructed that the term 'ordinary care' as used in these instructions is meant the degree of care that would be exercised by a person of ordinary prudence under the same or similar circumstances. The omission of such care is negligence as that term is used in these instructions."

No. 6.

"The Court instructs the jury that the burden is upon the plaintiff to prove to your reasonable satisfaction by the greater weight or preponderance of the evidence in this case, that the defendant, the Davis Construction Company, was negligent as submitted in the other instructions of the Court and that such negligence was the direct cause of the collision and plaintiff's injuries. This burden continues and abides with the plaintiff throughout the trial of the case and unless the plaintiff has proved said proposition to your reasonable satisfaction by a preponderance of the evidence, as above stated, then you will find your verdict for the defendant."

The instructions taken as a whole appear to have presented every phase of the issues fairly to the jury. The chief complaint lodged by defendant's counsel against plaintiff's Instruction No. 1, is that it put it up to the jury to determine whether, in the course of its work the defendant "did cause said highway to become covered with mud," whereas, it is claimed that there is no testimony that defendant placed any mud on the highway, but on the contrary, the rain falling on the dirt which spilled out of defendant's trucks and shook off the wheels, caused the mud and that "surely no one would argue that defendant was responsible for the rain," particularly as defendant "was conveying dirt for a legal purpose."

We are not impressed with this argument. It is not beyond the range of reasonable inference that the defendant did place mud on the highway. The testimony was to the effect that it rained "off and on" during the day. Now rain falling on dirt creates mud, and the falling of the muddy mixture of rain and dirt from defendant's trucks onto the highway would literally support the hypothesis that defendant put mud on the highway. We can also visualize the situation where defendant, by the exercise of reasonable ordinary care could have kept the highway reasonably safe for traffic. Instead of using such a long stretch of the old highway to transfer the dirt from one side to the other, it could have made a crossing of the old

highway so that its trucks loaded with dirt could have crossed the old slab at right angles and defendant could have placed a man there with a shovel and he could have kept this narrow crossing free from mud and consequent slipping, skidding and sliding of cars, as is shown by the evidence of such a long distance with its consequent dangers.

The testimony of witness Huff, originally a co-defendant, was to the effect that after the collision between the Model T Ford and his car he got out and that he was compelled to make several efforts to keep from falling on the slippery pavement.

The defendant was charged with the duty of using ordinary care to keep the highway safe for the traveling public; this duty it owed to *all* the traveling public, to plaintiff's father using a Model T Ford of the ancient vintage of 1924, as well as to those using more modern and more expensive cars.

The jury was authorized from the evidence adduced to find that defendant was somewhat remiss in the discharge of its duty to use ordinary care to keep the highway safe for traffic.

The answers of witness Barnett, field superintendent of defendant, show how lightly this duty rested on the shoulders of those in authority in prosecuting defendant's construction and repair work. Mr. Barnett was asked how many times a day the blade was run over the pavement and his reply was, ''as often as we thought necessary.'' He was then asked for the average and his reply was as follows: ''I couldn't say. Sometimes there would be more dirt drop off then at others. We watched the road, and if we thought it dangerous, we would clean it.''

Why wait until it became dangerous? Would not the dictates of ordinary or reasonable care require those in charge of defendant's business to clean off the pavement *before* it becomes dangerous?

The instructions given by the court at the request of defendant fully safeguarded defendant's rights. Defendant's measure of care was properly defined. The jury was advised that defendant was not an insurer against injuries to those using the portions of the highway under repair. Ordinary care was properly defined, and the jury was also advised that the burden of proving negligence on the part of defendant, and that such negligence was the direct cause of the collision and consequent injury to plaintiff, rested on and abided with plaintiff through the trial. We therefore rule this assignment of error against defendant.

Defendant's next assignment of error is the alleged improper remarks made by plaintiff's counsel in his argument to the jury, as follows:

''MR. REARDON: Maybe the modern means wasn't working there that day, because we don't hear from the fellow driving the tractor.

They could have thrown on a little chat and gravel. They were mixing concrete—they had that. They got trucks galore. That was all they needed.''

On objection of defendant's counsel to these remarks, the trial court remarked as follows: ''The jury has no evidence of that.'' Defendant's counsel then asked the court to reprimand counsel for arguing facts not in the record. Whereupon the court said: ''If counsel attempted to argue that as facts, it is improper.''

The following remark of plaintiff's counsel during the argument is also complained of, and the following colloquy took place:

''MR. REARDON: The money would be generally under the care and under the control of his Honor until she is 21 years old.

''SENATOR BROOKSHIRE: I object to that for the reason there is no evidence in this case about that.

''THE COURT: Sustained.

''SENATOR BROOKSHIRE: I ask that counsel be reprimanded for improper argument.

''THE COURT: There is no evidence of that.

''SENATOR BROOKSHIRE: I move that the jury be discharged and a mistrial declared for the failure of the Court to reprimand counsel for improper argument.

''THE COURT: Motion denied.

''SENATOR BROOKSHIRE: Save an exception.''

In reference to the first extract from the argument of plaintiff's counsel, we presume counsel referred to the tractor which operated the blade which was used to scrape off the mud from the pavement. The record does show that no one who operated the tractor testified at all so to that extent, counsel's statement was supported by the record. But we think that the arguments of plaintiff's counsel, complained of, were not harmful; and, in any event were properly handled by the trial court. It is apparent that only fragments of the arguments complained of appear in the record, and, taking it out of its context, we as a reviewing court are not in a position to determine its alleged damaging effect, as was the trial court, and it does not appear to us that the trial court abused its discretion in refusing to discharge the jury on account of the argument complained of. [Marlow v. Nafziger Baking Co., 333 Mo. 790, 63 S. W. (2d) 115; Goyette v. St. Louis-San Francisco R. Co. (Mo.), 37 S. W. (2d) 552; Kelso v. W. A. Ross Construction Co., 337 Mo. 202, 85 S. W. (2d) 527.]

As is said in 38 Cyc. 1485; ''Counsel should not be subjected to unreasonable restraint in commenting on the evidence, but should be allowed a wide latitude, this being matter for the sound discretion of the trial judge.'' We, accordingly, rule this assignment of error against defendant.

Finally, defendant complains that the verdict is grossly excessive.

It appears that plaintiff, at the time of the trial, which was nine months after the reception of the injuries, had five large scars, which were not completely healed and were tender; that these scars were permanent, unsightly and disfiguring; that as a result of the collision and these lacerations and scars, the plaintiff is unable to close one eye, and that this subjects the eye to possible future injury from particles in the atmosphere; that she has headaches, and her back bothers her and that she is nervous; that these conditions are permanent in nature; that the scars would exist "from now on"; that an operation to try to remove the scar from the eyelid was indicated; that the result of such an operation, even if it were performed, would, of necessity, remain in doubt, and would necessitate undetermined expense, and that she is still under the doctor's care. The scars on the face of a female are, ordinarily, regarded as more objectionable than on the face of a male.

Inasmuch as the trial court saw the plaintiff, in her injured and deformed condition, and overruled defendant's contention on this point, we feel that the superior vantage point enjoyed by that court should impel us to yield to the conclusion reached below, and we, likewise, overrule defendant's contention in respect to the size of the verdict.

Finding no error in the record materially affecting the merits of the case, it follows that the judgment of the trial court should be affirmed, and, it is so ordered. *McCullen, J.*, concurs; *Becker, J.*, absent.