## PITTMAN v. B. & L. CONCESSIONS, Inc.
### No. 5895.

United States District Court
W. D. Missouri, W. D.
May 17, 1950.

Thomas J. Stubbs and James L. Williams, of Stubbs, McKenzie & Williams, Kansas City, Mo. for plaintiff.

Alvin C. Trippe of Hogsett, Trippe, Depping, Houts & James, Kansas City, Mo. for defendant.

REEVES, Chief Judge.

This is an action for damages which the plaintiff claims to have accrued to her in an automobile collision on Missouri Highway No. 50 in Jackson County, Missouri, at about 12:50 P.M. on the 29th of July, 1949.

Plaintiff, with her husband's mother, was a passenger in a Chrysler automobile driven by her husband eastwardly on said highway with the object of visiting relatives at Laddonia, near Mexico, Missouri. The defendant's truck was being driven westwardly by one Lester Stansberry, and at a point where a filling station is located on the south side of said highway the driver of defendant's truck slowed down and suddenly turned to the left into the south lane of the highway with the purpose of entering the filling station located as above stated. He did this just as the driver of the Chrysler car in which plaintiff was riding came over a rise some 70 feet back from the point of collision and traveling at a speed of 40 to 45 miles per hour. The defendant's truck driver gave no signal of his purpose to make the turn to the left. At the time of the collision the front end of the truck was approximately 3 feet across the center line on to the south side or south lane of the highway. The left front of the chrysler in which plaintiff was traveling, hit the right front of the truck, and according to the evidence the truck was forced back a few feet by the impact.

It is the contention of the plaintiff that the truck turned immediately in front of the car in which she was riding, and that her husband was unable either to stop or to swerve to the right so as to avoid the collision.

On the other hand, it is the contention of the defendant that the driver of the car in which plaintiff was riding saw, or should have seen, the peril in time to have stopped or to have changed the direction in which his automobile was being driven.

Officer Elvert O. Nash was a Missouri highway patrolman or trooper and had been such for seven years. He came to the scene of the accident within a few minutes after the accident occurred. The truck at the time was 3 feet over on the south lane of the highway. The truck driver told the witness that he had started into the filling station when the driver of the Chrysler "popped up and hit me though stark-still." The officer said that the crest of the rise was 70 feet west of the point

where the accident occurred. The witness gave expert testimony upon the ability to stop moving vehicles. He said that it would take 75 hundredths of a second for the driver of a moving vehicle to react to a situation such as confronted the driver of the Chrysler automobile, and, that, traveling at a speed of 40 miles per hour, a vehicle would travel 155 feet before it could be brought to a stop.

Ralph L. Sears was present at the filling station and saw the accident. He confirmed the undisputed testimony that the truck was endeavoring to turn southwardly into the filling station. He said that the Chrysler and the truck were about 25 to 30 feet apart when he first saw them and that the collision was like an explosion. A Packard automobile was following closely behind the truck and when the collision occurred, the truck was forced backward into the Packard, so that three vehicles were involved. He confirmed the evidence of Officer Nash to the effect that the truck driver said that he had not seen the Chrysler approaching from the west.

Glenn Pittman, the first witness for the plaintiff and the husband of plaintiff, testified that he was driving a Chrysler automobile, with his wife and mother as passengers, eastwardly on Highway 50 when the collision occurred about 12:50 P.M., July 29, 1949. The car was traveling at a speed of 40 to 45 miles per hour. He had seen the truck traveling westwardly in the north lane of the highway and there were no vehicles between him and the truck. The truck turned suddenly into the south lane of the highway without notice or signal. It was a matter of seconds until the impact. He testified further that in conversation with the truck driver, the truck driver admitted that it was his fault, as he did not see the Chrysler approaching. He also gave testimony as to the condition of his wife after the impact. He said that she was dazed, and suffered from the loss of blood. Moreover, he said there were no scars on his wife's face before the accident.

Other witnesses testified substantially to the same effect.

According to an overwhelming preponderance of the testimony the plaintiff came in view over a slight rise, 70 feet west of the point where the collision occurred. The driver of the Chrysler was then traveling at a speed of 40 to 45 miles per hour. At that time the truck was proceeding at a slow speed toward the west on its own lane (the north lane of traffic.) The truck driver did not observe the approach of the Chrysler and since he gave no signals of his purpose to turn, the driver of the Chrysler car was not apprized of that fact until he was within a few feet of the point where the collision occurred. Clearly the collision was occasioned by the fault of the truck driver and plaintiff should be awarded such damages as may have accrued to her. The impact was quite severe. Plaintiff's body was hurtled toward front of the automobile in which she was riding and her face struck the windshield in such way that she received severe lacerations. She was rendered partially unconscious. Her limbs, hands, and head were hurt and there were multiple cuts of her face. She was removed from the filling station hard by (where she had been taken following the collision) to a hospital in Kansas City where a general anesthetic was administered and between 50 and 60 stitches were necessary to sew up wounds from which considerable glass was then and thereafter removed. After two days in the hospital she continued on to Laddonia, Missouri, to be with relatives and was there treated by physicians. She has a number of disfiguring scars: under her nose and on her left cheek, and also above her right eye. Moreover, the muscles of her left eyelid have been damaged so that the eyelid droops. She suffered and has continued to suffer, though with some amelioration, from headaches.

She has brought suit for $25,000. She is a young woman of only 29 years of age. The scars of her face cause her embarrassment in her social life and in her club and church work. There was testimony that the scars of her face could be reduced by surgery at a cost of approximately $300. However, it would be necessary for her to be hospitalized and to submit to a general anesthetic.

In the case of Hays v. United Railways Co., 183 Mo.App. 608, loc. cit. 612, 167 S.W. 656, loc. cit. 657 the St. Louis Court of Appeals, in approving a verdict and judgment for $4000 for facial injuries to a young girl, made the following comment: "The fact that plaintiff is a young female * * * is to be considered in such cases when the matter of the award of compensation for the loss is reviewed, for the disfigurement of a young lady's appearance is infinitely greater in its consequences upon her future than a like disfigurement upon a young man."

And, in the later case of Grab v. Davis Const. Co., 233 Mo.App. 819, 109 S.W.2d 882, loc. cit. 889, the St. Louis Court of Appeals approved a verdict of $5000 where the plaintiff, a young girl (much younger than the plaintiff in this case, however) suffered facial injuries. The court said: "It appears that plaintiff, at the time of the trial, which was nine months after the reception of the injuries, had five large scars, which were not completely healed and were tender; that these scars were permanent, unsightly, and disfiguring; that as a result of the collision and these lacerations and scars, the plaintiff is unable to close one eye, * * *; that she has headaches, and her back bothers her, and that she is nervous; that these conditions are permanent in nature; that the scars would exist 'from now on'; that an operation to try to remove the scar from the eyelid was indicated; that the result of such an operation, even if it were performed, would, of necessity, remain in doubt, and would necessitate undetermined expense; and that she is still under the doctor's care. *The scars on the face of a female are ordinarily regarded as more objectionable than on the face of a male.*" (Emphasis mine.)

In the case of Van Horn v. Union Fuel & Ice Co., Mo.App., 31 S.W.2d 265, the St. Louis Court of Appeals upheld a verdict for $2500, where it appeared that the plaintiff had sustained a sprained back, permanent injuries to her lip, and permanent scars.

A photograph of the plaintiff offered in evidence depicts quite graphically the disfigurement of the scars. Moreover, the plaintiff testified, and the scars of her face were quite obvious.

In the Grab case, supra, the verdict was rendered approximately thirteen years ago. The cost of living has considerably increased since that time and the dollar has lost value. It would appear, therefore, that a reasonable compensatory judgment or award would be $7500, and it will be so ordered.