## Winston & Company v. Clark County.

(Decided December 18, 1917.)

### Appeal from Clark Circuit Court.

1. Highways—Counties—Statutes.—Sec. 4325, Ky. Stats. (Ed. 1909) imposing the duty on those causing damage to public roads by unusual use thereof, to repair the damage, is declaratory of the county's authority to regulate or limit the use of the roads.

2. Highways — Use — Counties — Authority — Damages.—Neither a county nor its officers has authority to limit the extent of the usual or ordinary use of a public road by any part of the public; and it is the duty of the county to repair any damage resulting from such use.

3. Highways—Use—Counties—Contracts—Damages.—A county may in advance, legally contract with a party about to make an unusual use of its public roads for the repair of such damage as may result from their unusual use.

4. Highways—Contracts—Construction—Damages.—Damage as used in a contract between a railroad contractor and a county by which the contractor agreed to repair certain roads, bridges and culverts, if damaged as a result of the transportation thereover of the contractor's equipment, construed to mean the damage resulting from unusual use by the contractor.

5. Highways—Use.—What is an unusual use of a public road is impossible of exact definition, but it refers to the character and not the extent of the use, and must be determined from the facts and circumstances of each case.

6. Highways—Trial—Damages—Instructions.—In an action for damages for the unusual use of a public road, an instruction authorizing a recovery for any damage done to the roads resulting from defendants' subcontractors and others hauling for them, held erroneous and prejudicial because it includes damage resulting to the roads from both usual and unusual use.

PENDLETON & BUSH for appellants.

J. F. WINN and S. T. DAVIS for appellee.

OPINION OF THE COURT BY JUDGE CLARKE—Reversing.

Winston & Company, a partnership, had a contract with the Louisville & Nashville Railroad Company to construct a new branch line of railroad from Winchester, in Clark county, to Irvine, in Estill county, and had sublet portions of the contract to other contractors.

In order to reach their respective portions of the proposed railroad, these sub-contractors had to haul their equipments from Winchester, over the roads and turnpikes of Clark county, and Winston & Company asked permission of the county judge and road supervisor for such use of the roads, in this letter:

"Winchester, Ky., June 10.

"Judge J. H. Evans,
"Mr. D. H. Haggard, Road Supervisor,
          Winchester, Ky.

"Gentlemen:

"Referring to the conversation of the writer with Judge Evans, we request that you grant to our subcontractors, Johnson & Briggs, also, Sturm & Dillard, the privilege of moving their steam shovels and plant over the county road to their work. This movement of steam shovels, etc., will be on temporary track which will be laid on cross ties. There will be no contact with the roads of the wheels and owing to the distribution of the weight there will be no excessive pressure on the road by the cross ties at any point. Such material as is not moved on the railroad track will be transported in wagons in the usual way.

"Our contractors propose to use a steam road roller facilitating moving the shovels, etc. This road roller will, of course, tend to improve your roads and can do them no damage.

Our contractors will use every precaution to prevent any blocking of the traffic and while it might be unavoidable for a brief period to keep the road open at the point where the shovels are, this delay of traffic would probably not exist for more than one hour and probably there will no interference with traffic at all. While we see no reason for any damage being done to your road, we will hold ourselves responsible and repair immediately any damage that might be done. This being the only means of getting the plant on the railroad work we trust that you will grant this favor and give us authority to use county roads.

"Yours very truly,
"WINSTON & COMPANY,
"By R. D. Trimble."

In response to this request, the following letter was sent them:

"Winchester, Ky., June 13th, 1913.

"Messrs. Winston & Company,
Winchester, Ky.

"Gentlemen:

"In answer to yours of June 10th, relative to moving steam shovels and such other material as is necessary to the building of the railroad from Winchester to Irvine, Ky., we see no other way for Messrs. Johnson & Briggs and Sturm & Dillard, sub-contractors, to get their shovels and material to place of operation except over the turnpike road. We ask that the contractors use every precaution to protect the road and to use especial care to protect the traveling public, and we hope very much they will use the automobile trucks, you spoke about, in transporting the material besides the steam shovels and also the roller in transporting the shovels.

"Yours very respectfully,
"J. H. EVANS,
County, Judge.
"D. S. HAGGARD,
Road Supervisor."

Shortly thereafter and when the sub-contractors were ready to use the roads, the following contract was executed:

"This contract made and entered into this 25th day of June, 1912, by and between the Fiscal Court of Clark County, Ky., party of the first part, and Winston & Company, a firm, parties of the second part.

"Witnesseth: That the said first party hereby agrees that the said second party and their sub-contractors shall have the right to do all hauling or such other like use as may be necessary in the construction of the portion of the L. & N. Railroad which is being built by said second parties in Clark County, Kentucky, over the turnpike known as the Winchester, Ruckerville and Vienna Turnpike, or any other public road of Clark County. The said party however hereby grants said right to the said second parties, only upon the terms and conditions and for the consideration expressed in this contract.

"Said second parties agree and bind themselves to take proper and suitable care of, and to protect the travel or traveling public on said roads during the period of their use of same. They further agree to immediately repair said roads, or any part of them, or the bridges and culverts thereon, as to damage done or caused by them or any sub-contractors at any time they are notified by the Road Supervisor of Clark County to do so; said repairs to be made in accordance with the directions of said Supervisor. They further agree that upon completion of their work under their contract on said railroad, or upon cessation of their work upon same, to immediately put the said turnpike and other roads, wherever the same has been used by them and all bridges and culverts as to any damage done or caused by them or any sub-contractors, in as good condition as they are in at the present time and to the satisfaction and approval of the Road Supervisor. They further agree and it is understood by both parties, that this contract shall become fully binding only upon the signature of both parties, and upon the execution by the said second parties of a bond for the sum of $10,000.00, with surety to be approved by the County Judge, that it will faithfully comply with the conditions of this contract.

"CLARK COUNTY,
"By J. H. Evans, P. J. C. C.
"WINSTON & Co.,
"By Roswell D. Trimble."

A bond was executed by Winston & Company in the sum of $10,000.00 for their performance of the contract.

After the sub-contractors had completed their contracts and on July 25, 1914, Clark county brought this suit on the bond to recover under the contract for damages done by the sub-contractors, not only for damage done in moving their equipments from Winchester over the county's roads and turnpikes to the railroad right of way, but also for all damages done by use of the roads by the sub-contractors, their agents and employes, and any one else for them, in hauling with ordinary wagons and trucks, as well as with wagons and trucks of extraordinary capacity carrying unusually heavy loads. In other words, the county sought to recover for both such uses of the road as were unusual in character and for excessive and, in fact, all use, of an ordinary character. After demurrer to the petition had been overruled, defendants answered admitting the execution of the contract and bond, but traversing the other allegations of the petition. A trial before a jury resulted in a verdict and judgment against defendants for $5,000.00, from which this appeal is prosecuted.

Defendants ask a reversal upon two grounds, as follows: First, that the contract is void, because *ultra vires;* second, if valid, the contract is limited to uses unusual in character for two reasons: (a) such is its meaning properly construed; and (b) such is the limitation of the authority of the county, if any, to contract with reference to the use of the public roads.

Without attempting to define the powers of the county, through its fiscal court and road supervisor, to control and manage its public roads, or the authority of the fiscal court to grant rights in the roads which could be exacted under powers of eminent domain, subjects not here involved, we shall confine our discussion strictly to the contract before us, and the powers of the county and its officers with reference thereto.

Section 4325, Kentucky Statutes (1909 Edition), then in force, although since repealed, is as follows:

"Any corporation, company or individual who may, by unusual use of a road, materially damage the same, shall repair all damages caused by the use of such road or roads. The supervisor or overseer of roads shall, at any time when necessary, notify said corporations, companies or individuals of their duty as provided in this section; and should the said parties so notified fail, in a reasonable length of time, to be fixed in the notice, to

make such repairs, such parties shall be deemed guilty of obstructing the public roads, and shall be subject to a fine not exceeding one hundred dollars, to be applied to road purposes."

While the statute is certainly not the only authority of the county, or its officers, to control or manage public roads, and probably is not the source but rather only a penal statute declaratory of the county's authority to regulate or limit the use of the roads, nevertheless, it does, in our opinion, correctly indicate the limit of that authority without, in any way, abrogating any civil remedy by injunction or for damages, or the common law remedy, by indictment, for an obstruction amounting to a nuisance. Commonwealth v. I. C. R. Co., 104 Ky. 366; Commonwealth v. American Telephone & Telegraph Co., 84 S. W. 519; Commonwealth v. Beales, 119 S. W. 813; Christian County v. Rankin & Tharp, 2 Duv. 503; Lawrence County v. Chatteroi R. Co., 81 Ky. 227; Greenup County v. Maysville & B. S. R. Co., 88 Ky. 659; L. & N. R. Co. v. Whitley County, 95 Ky. 215, 44 A. S. R. 220; Leslie County v. Southern Lumber Co., 89 S. W., 242; Commonwealth v. Prall, 141 Ky. 560.

It will be noticed that the statute does not make the unusual use of a road illegal nor prohibit such use, but makes it illegal and punishable to fail, upon notice, to repair the damages consequent upon such use; it was not, therefore, an illegal use of the roads to move the steam shovels and other equipment over them, if done with proper regard for the rights of others, any more than it would be illegal to move a house along a public way, which might or might not be illegally done, but either such use, even though done in a legal manner, is so unusual as, under the statute at least, to make any member of the public liable, civilly for the repair of any damage to the road resulting from such unusual use, and criminally, for a failure, upon notice, to repair. The civil right which the county could enforce after the damage was done, it unquestionably had the right to protect when the fact was not merely suspected, but established, that damage would result; and the execution of this contract, we are quite sure, is sufficient proof that the parties thereto agreed that injury to the roads would result from the contemplated unusual use and we shall so treat it; and we are not concerned with any question of whether or not the county could have exacted the contract and bond, or what would have been its remedy if they had not been executed.

We feel equally safe in saying, without citation of authorities, that neither the county nor its officers had any authority to limit the extent of the usual or ordinary use of a public road by any member of the public. He may go and come as often as he likes, and any damage that may result from such use is but ordinary natural wear and tear, the duty to repair which is by law imposed upon the public through its officers and not upon the individual.

Therefore, it seems to us quite clear the county could legally contract for the repair of such damage as would result to the public roads from the unusual use contemplated by the defendants and for which they were liable, but that the county was without authority to place restrictions upon defendant's right to use the roads in an ordinary or usual manner, no matter how extensive that use might be, or to impose a liability for such use; and it was likewise without authority to grant or to withhold permission, for any ordinary or usual use of the roads by defendants, or any member of the public, different from that enjoyed by all, or to make any binding contract with reference thereto.

In view of the fact that the contract, by its terms, seems to apply only to ordinary hauling and contains no reference whatever to any contemplated unusual use of the roads by defendants, which the correspondence and the circumstances leading up to its execution show it was intended to cover, and relieve it from apparent illegality, it is manifest the contract is ambiguous, as asserted by defendants in their offered amended answer, which the court would not allow to be filed.

The contract, when construed in the light of the authority of the county to make it and of the correspondence and circumstances leading up to its execution, can only be held to mean and to obligate the defendants to repair such damage as resulted from their unusual use of the roads. Just what is an unusual use of a road, as contemplated by the statute, is probably impossible of exact definition in advance and must be determined on the facts and circumstances of each case, but certain it is that the word unusual refers to the character and not to the extent of the use.

The lower court did not so construe the contract or the statute, as is evidenced by the rejection of defendants' amended answer, the admission of evidence and the instructions given and refused. We need, however, refer only to the instructions given. A recovery was author-

ized for any damage done to the roads by defendants' sub-contractors, their agents and employes and independent contractors hauling for them; and this, under the contract, was proper had it been confined to damages resulting from unusual uses by such parties, which was not done, but instead a recovery was permitted for damages from any and all hauling by these parties, usual and unusual. To the extent the instructions permitted a recovery for ordinary and usual uses of the roads, for which defendants were not liable, they were, erroneous and prejudicial; as was also the admission of evidence of such uses.

Wherefore, the judgment is reversed and the cause remanded for a new trial consistent herewith.