HARDY, Judge.
This is a suit in which plaintiff seeks to recover damages to his automobile allegedly resulting from the negligence of defendant, a non-resident partnership domiciled *516 in Dallas, Texas. Writs of attachment were issued under which property belonging' to defendant was seized. After trial there was judgment in rem in favor of plaintiff as prayed maintaining the writ of attachment and recognizing plaintiff’s lien and privilege on the property seized. From this judgment defendant has appealed.
The accident occurred about 4:15 P.M. on January 12, 1951, at which time plaintiff was driving north on Highway 10' en route from Shreveport to Benton. At a point some three and one-half miles north of Bossier City plaintiff’s car encountered a stretch of road which, for a distance of some 200 yards more or less, had been rendered extremely dangerous by a deposit of mud and dirt upon the highway, made extremely slippery as the result of a drizzling rain that had been falling practically during the entire day. At the time the defendant partnership was the general contractor in the performance of some bank protection work on Red River for the Bossier Parish Levee Board. In the course of the work on this project it was necessary to haul quantities of rock to the site of the work, and it is definitely established that the deposits of mud and dirt on the highway resulted from the operations of the dump trucks engaged in this hauling operation.
Plaintiff charges that the defendant was guilty of negligence in creating an extremely dangerous and hazardous condition and failing to take extraordinary precautions for the purpose of warning motorists using the highway. Defendant urged in answer that plaintiff’s accident resulted from his own negligence, or, alternatively, his contributory negligence in traveling at an excessive rate of speed estimated to be in excess of 50 miles per hour under the prevailing bad weather, and road conditions which existed, to the personal knowledge of plaintiff; in attempting to traverse this section of the highway without reducing speed; failing to keep his car under proper control, and in failing to keep a proper lookout and maintain constant vigilance for the purpose of determining the dangerous condition of the highway.
At the time of the accident plaintiff testified that he was driving at a speed of approximately 35 to 40 miles per hour; that he struck the slippery muck on the highway and skidded into the ditch at the side of the road, in the course of which his car turned over twice, sustaining the damages for which he seeks recovery.
There is not the slightest ground for doubt as to the existence of the dangerous condition of the highway and the indisputable fact that it was caused by the rock hauling trucks. It is also conclusively established that no extra precautions were taken for the purpose of attempting to warn motorists on the highway of the unusual hazard which existed at the time. One of plaintiff’s witnesses, who lived in close proximity to the scene of the accident, testified that during the course of the afternoon she observed four vehicles skid into the ditch at approximately the same location which was the site of plaintiffs misfortune.
The record completely fails to support the charges of negligence asserted by defendant against plaintiff. In support of the alternative plea of contributory negligence, defendant contends that plaintiff had made the trip from Benton to Shreveport in the early morning and should have been aware of the dangerous condition of the highway and, thus warned, should have taken extra and unusual care and precaution in traversing this slippery stretch on his return trip that afternoon. The testimony shows that it was principally the east side or lane of the highway which was affected by the dangerous deposit of mud and dirt. In traversing this stretch en route to Shreveport in the early morning plaintiff had traveled the west lane of the highway. Additionally, it is noted that the weather report filed in evidence by defendant shows that during the early morning hours, that is from midnight up to 6:00 o’clock A.M. on the 12th of January, an unusually heavy rain totaling slightly more than two inches had fallen. It is evident that this heavy rain would have' had the effect of washing the highway clean of any deposit which existed at that time. Un *517 questionably it was the activities of the hauling operations subsequent to this time that placed a new deposit of dirt and mud on the east lane of the highway. The misting, drizzling rain which fell during' the entire day obviously would have served to soften and render slippery and slick this deposit of mud and dirt. It would be unreasonable to convict this plaintiff of contributory negligence under the existing facts and circumstances.
The most serious defense, that which is most strenuously urged by defendant, is predicated upon the contention that the dump trucks engaged in the hauling operations were operated by one C. P. Huckle-bridge, who was an independent contractor, charged with the responsibility of all truck hauling for the benefit of the defendant as general or principal contractor on the project. The point is made that the negligence, if any, was attributable entirely to the alleged independent contractor for which the defendant could not be held liable under the law. We do not think it necessary to enter into a discussion of the law with reference to a determination of this point for we think the issue is settled by the facts developed on the trial of the case.
Defendant’s general superintendent in charge of the operations first testified on cross-examination that there were no trucks belonging to defendant which were engaged in the hauling operations and that any hauling which was done on the day in question was performed entirely, exclusively and wholly by Hucklebridge, the independent contractor. In testimony later developed this witness qualified his first very positive statements as above set forth by admitting that he was not sure that none of the trucks of defendant were engaged in hauling operations on the day in question and that it could have been that some of defendant’s trucks were helping out in the operation. No effort was made to throw additional light on this disputed point by the testimony of any other witnesses, either the alleged independent contractor or employees. On these facts we can only conclude that defendant’s trucks participated or engaged, to greater or less degree, in hauling operations and therefore defendant would be liable for the acts of negligence charged and established. It must be borne in mind that the proposition involves a special defense asserted by the defendant who therefore bears the burden of proof. We are firmly convinced that he has failed to discharge this burden by the requisite preponderance of evidence. We further observe m this connection that despite the testimony of defendant’s superintendent that the asserted hauling contract with Hucklebridge had been reduced to writing no effort was made to introduce the contract nor to tender any evidence with regard to the terms and conditions thereof. Admittedly the contract was not of record.
For these reasons, on the basis of the well established facts, we find the judgment appealed from to be correct and accordingly it is affirmed at appellant’s cost.
McINNÍS, J., recused.