Kent E. **TEICHMAN**, Plaintiff-Appellant,

v.

**POTASHNICK CONSTRUCTION, INC.,** and
D. L. Harrison Company, a Corporation,
Defendants-Respondents.

No. 53645.

Supreme Court of Missouri,
En Banc.

Oct. 13, 1969.

James R. Robison, Edwards & Robison, Sikeston, Sherwood R. Volkman, St. Louis, for appellant.

Finch, Finch, Knehans & Cochrane, Jack O. Knehans, Cape Girardeau, for defendants-respondents.

HOLMAN, Judge.

Plaintiff Kent E. Teichman sought $60,-000 damages against defendants John R. Teichman, Potashnick Construction, Inc., and D. L. Harrison Company for personal injuries. About 2 p. m. on December 22, 1961, plaintiff was a passenger in a southbound truck then being driven by his cousin, defendant John R. Teichman, when the truck ran into a "big hole" on a public road known as the old Cape-Jackson road, went off the right-hand or west side of the road, and struck a tree. On or about June 17, 1964, the sum of $9,450 was paid by or on behalf of defendant John R. Teichman to plaintiff, in consideration of which the latter executed a covenant not to sue and dismissed without prejudice as to that defendant. The case was tried on January 15, 1968. At the close of plaintiff's case the court directed a verdict for defendants Potashnick and Harrison, and from the judgment entered thereon plaintiff has appealed.

Although insisting on appeal that direction of a verdict for defendant Harrison was erroneous, plaintiff frankly concedes that the evidence did not justify submission against defendant Potashnick. Accordingly, we are concerned only with submissibility as to defendant Harrison, to whom we hereinafter frequently refer as defendant. The appeal was originally heard in Division One where an opinion was prepared but not adopted. The case was thereafter transferred to Court en Banc. After submission en Banc an opinion was prepared which was not adopted and the cause has recently been reassigned to the undersigned. Portions of the last-mentioned opinion are here adopted without the use of quotation marks.

We dispose preliminarily of defendant's assertion that plaintiff's motion for new trial was too general to preserve the question of submissibility for appellate review. In Beyer v. Pick, Mo.App., 428 S.W.2d 1, 3, upon which defendant here relies, the motion for new trial merely recited that "the court erred in sustaining defendant's motion for a directed verdict at the close of plaintiff's evidence," without bringing to the attention of the trial court any particular reason for objection to that ruling. In instant plaintiff's motion for new trial the initial assignment "that the court erred in directing a verdict for the defendants" was followed by a statement specifying the reason why the court erred in so

395

doing, to wit, because "under the plaintiff's evidence a submissible case of negligence was made out against the defendants and the court erred in not submitting the case to the jury on its merits."

■ Defendants' motion for a directed verdict had stated generally "as grounds therefor" that no evidence had been offered or received "to sustain the allegations against the defendants" or "proving or tending to prove that defendants were guilty of any negligence, whether alleged or not," and that plaintiff's evidence established his contributory negilgence; and, as the trial court's comments at the time clearly indicated, the verdict was directed for the reasons that "there has been no negligence proved against the defendants in this case" and plaintiff's contributory negligence was expressly excluded as a ground for such direction. Advised by plaintiff's motion for new trial of his contention that he did make a submissible case of negligence against defendants, it was the duty of the trial court to re-examine the question whether plaintiff had made a case on any ground of negligence alleged, even as it had been the court's duty in determining defendants' motion for a directed verdict, couched in general terms, to have overruled it if plaintiff had made a case on any ground of negligence alleged. Nelms v. Bright, Mo., 299 S.W.2d 483, 488 [12]; Ruby v. Clark, 357 Mo. 318, 324, 208 S.W.2d 251, 255 [4].

■ In the circumstances of the case at bar, we are of the opinion that the hereinbefore quoted allegations in plaintiff's motion for new trial adequately advised the trial court of plaintiff's contention and were sufficiently specific to present and preserve the question as to whether plaintiff's evidence made a submissible case of negligence against defendant. That being true, our appellate duty is to "review the whole record to determine if a case was made for the jury upon any theory of liability set forth in the plaintiff's petition."

Bowers v. Columbia Terminals Co., Mo. App., 213 S.W.2d 663, 667 [2].

In resolving the issue as to submissibility, we must consider all of the evidence in the light most favorable to plaintiff, accept it as true where it is not entirely unreasonable or opposed to physical laws, accord to him the benefit of all favorable inferences reasonably deducible from the evidence, and reject all unfavorable inferences. Baumle v. Smith, Mo., 420 S.W.2d 341, 344 [2]; Nelson v. O'Leary, Mo., 291 S.W. 2d 142, 147 [3]; Holmes v. McNeil, 356 Mo. 763, 768, 203 S.W.2d 665, 668 [2]. And we must bear in mind that a case may not be withdrawn from the jury unless the facts in evidence and the inferences fairly to be drawn therefrom are so strongly against plaintiff as to leave no room for reasonable minds to differ. Hastings v. Coppage, Mo., 411 S.W.2d 232, 235 [2]; Chappell v. City of Springfield, Mo., 388 S.W.2d 886, 892 [8]; Capriglione v. Southwestern Bell Tel. Co., Mo., 376 S.W.2d 205, 206 [3].

Defendant Harrison, then engaged in construction work on Interstate Route 55 through Cape Girardeau County, had a "batch plant" near a rock quarry about two miles north of the point of accident. The old Cape-Jackson road was the only route available to defendant over which sand could be transported from a point on the Mississippi River in the south part of Cape Girardeau to the batch plant and, in turn, material could be hauled from the batch plant to the job site. From November 1, 1961, to the date of accident, December 22, 1961, about ten of defendant's Mack tandem dump trucks were steadily engaged in the hauling operation over the old Cape-Jackson road. The empty weight of each truck was approximately 10 tons, the loaded weight approximately 20 tons, and each was licensed for 42,000 pounds or 21 tons. Each truck hauled "probably 10 loads" every working day. When they were "hauling steady" the trucks were about "five minutes apart * * * all day long."

Before this hauling operation began, the asphalt surface of the old Cape-Jackson road was "in excellent condition"—"there wasn't hole one in that road * * *." Within a few days after defendant's trucks commenced to haul over the road, the asphalt surface started to break in certain areas. As witness Keene, one of defendant's truck drivers, described it "there was some places in the road it seemed like it was kinda' pumpy * * * the dirt would give with you, it was spongy." Of course, holes in the blacktop did not appear "the first day," but at "softer places in the ground * * * the first week maybe a place would go to breaking up, then another one here and there just until it got pretty bad." It was "a sort of progressive thing." In the areas where the surface broke up, pieces of asphalt worked to the side of the road, "mires * * * and ruts" developed, and "the road kept spreading and going down." The "hole" at the point of accident (near the Heuer farm home and hereinafter referred to as the Heuer hole) "was larger, deeper, and extended across the road much more than any of the others." "Actually, it was a sort of a ditch" about 1½ feet wide and 6 to 8 inches deep which extended "about three-quarters way across the road"—"sufficiently across the road to both sides that you could not get around it."

As soon as the first "break-through" in the asphalt occurred defendant moved a motor patrol, i. e., a road grader, onto the road. This was (so witness Keene said) "in two or three days" or "the first week, maybe." Whatever the precise initial date may have been, thereafter "the motor patrol was on the job all the time." Defendant had "a foreman there and a lot of times he'd say, 'don't bring a load of sand this time * * * bring a load [of chat] for the road,'" so chat was hauled for the road by some of defendant's drivers "every day." This chat was spread on the broken areas of the roadway and "then the motor patrol would keep it level, or try to." Witness Keene described particularly what de-

fendant did at the Heuer hole: "The road got pumpy * * * like you run over rubber, and after the blacktop broke up, why, it would just work out ruts, and we'd haul gravel or chat * * * every day and put in it and they would keep it smoothed up but it would still keep rutting out * * *. As we kept going through it, naturally, the road kept widening out * * * and that's what the motor patrol would do was to bring this back and then we'd put fresh chat in there and try to keep it smooth * * *. When it would wallow out [defendant] kept trying to fix it." But the trucks were "coming along there pretty frequently and it just wallowed out at the best they could do, and it was bad, real bad." The same witness said that the motor patrol "was used wherever it was needed the worst" on the road but that "I have an idea it was at that one particular place [the Heuer hole] every day at some time. Witness Heuer (who was away from home, working, most every day) thought that he had seen them blade the hole "at least three times a week."

During the period under discussion, the Cape Special Road District also did some grading and blading of the old Cape-Jackson road, although the nature and extent of such work by the Road District were not shown. However, when witness Heuer talked to the engineer for the Road District about "trying to settle the dust in front of the house" he (Heuer) was instructed to call defendant Harrison; and, although he failed to contact Mr. Harrison personally, a second call to Mrs. Harrison was followed by an application of calcium chloride on the road in front of the Heuer home.

In driving northbound over the old Cape-Jackson road from Cape Girardeau to his uncle's home within an hour prior to the accident, plaintiff had seen and, at a speed of 20 to 25 miles per hour, had safely traversed the Heuer hole. Shortly after arrival at his uncle's home, his cousin (defendant) John, a trooper on the Missouri State Highway Patrol stationed at Sikeston

but that day helping his father (plaintiff's uncle) on the farm, invited plaintiff to accompany him to Cape Girardeau to pick up some roofing; and, with John driving the 1957 International two-ton flatbed truck, the two cousins left on that mission. It had started to mist and the pavement was wet. With John driving at a speed variously estimated at 25 to 50 miles per hour, the cousins had proceeded about two miles before they approached the Heuer hole. When the southbound truck was about 75 yards north of that hole plaintiff told John, "you had better watch out, there's a pretty good-sized hole ahead," but said nothing about the speed of the truck then or at any other time. Although not undertaking to repeat the conversation, John agreed that, as the truck neared the Heuer hole, he and plaintiff "were discussing" that hole, of which John admittedly was aware anyway. According to John, southbound "traffic was all pulling over to the right-hand [or west] side of the road as far as they could pull [so] I did the same thing." He "wasn't planning on stopping" but he intended to and did slacken speed by "kicking" the truck transmission from "second gear, high range * * * down to low range, second gear." As John put it, "I wasn't going fast in the first place and * * * that kicks it down quite a bit and slows it up rather rapidly * * *. I thought I slowed down enough." Traveling at an estimated speed of 25 miles per hour, "I got over [to my right] as far as I could and my left front [wheel] went in the hole and the back end of the truck came around, the front end went off the embankment and I had no more control of it."

The pleaded assignments of negligence were that the defendant contractors (1) "overloaded [their] trucks and drove [them] at a high and unreasonable rate of speed, causing the [Heuer] hole to be developed" in the old Cape-Jackson road, (2) "failed to place a warning" of that and other holes in the road, and (3) "attempted to repair said highway, but negligently and carelessly failed in repairing it so that it

would be safe for the public, particularly that of the plaintiff and his driver."

█ ASSIGNMENT I. The undisputed evidence adduced by plaintiff was that each of defendant's trucks was licensed for 42,000 pounds or 21 tons and that the loaded weight of each was approximately 20 tons; and there was no showing or even suggestion that the load imposed by each such truck upon the old Cape-Jackson road violated any lawful regulation or limitation or was in any respect illegal. Defendant's trucks were "overloaded" only in the sense that in certain areas neither the asphalt surface nor the underlying base of that road was adequate to carry the loads imposed by those trucks, and the charge that they were driven "at a high and unreasonable rate of speed" was wholly unsupported. In fact, there was no testimony whatever pertaining to the manner in which the trucks were driven or operated. The record before us indicates no more than that the holes developed by reason of the weight of the loads and the frequency of the trips —neither of which contravened any lawful regulation or limitation. That showing afforded an insufficient predicate for legal liability on plaintiff's first pleaded assignment, for "a lawful act performed on the highway in a lawful manner does not give rise to an action in tort. 40 C.J.S. Highways § 252 a, 1. c. 287, citing Shepard v. Utah Light & Traction Co., 55 Utah 186 184 P. 542, 546 [4]. See particularly Sumner County v. Interurban Transportation Co., 141 Tenn. 493, 213 S.W. 412, 5 A.L.R. 765, the subject of a short annotation at 5 A.L.R. 768, where the annotator briefly digested the primary holding in the subject case as being "that in the absence of statute there can be no recovery of damages for an excessive use of a public road in driving vehicles heavier than usual over it," observed that "[t]his seems to be a case of first impression in this country, in the absence of statute," and commented that "the decision appears to be in accord with the general American theory as to right to

use the highways." Cases [1] dealing with situations in which the alleged tort-feasor discharged, deposited, or dropped a foreign substance or object on a highway, are not controlling or persuasive here. We conclude that instant plaintiff did not make a submissible case on his first pleaded assignment of negligence.

ASSIGNMENT II. This assignment charged negligence in defendant's failure "to place a warning of said holes in said highway." One of the essential elements of *actionable* negligence is that it must have been a proximate cause of injury. Consumers Cooperative Ass'n v. McMahan, Mo., 393 S.W.2d 552, 555 [1]; Walker v. Massey, Mo.App., 417 S.W.2d 14, 21 [5]; Graham v. Conner, Mo.App., 412 S.W.2d 193, 201 [6, 7], and cases there cited. Assuming *arguendo* instant defendant's duty "to place a warning" and a breach thereof, we are reminded immediately that plaintiff's evidence plainly established that he had traveled the same road and had passed the Heuer hole within an hour of the time of accident, that the host driver, cousin John, theretofore was aware of the existence and location of that hole, and that when the southbound International truck was some 75 yards north of the hole plaintiff and John "were discussing" it. No one needs notice of what he already knows and appreciates. Moore v. Kopp, Mo., 400 S.W.2d 176, 181 [4]; LaPlant v. E. I. DuPont de Nemours & Co., Mo.App., 346 S.W.2d 231, 245. In the stated circumstances a posted warning would have served no useful purpose (cf. Beckwith v. Standard Oil Co., Mo., 281 S.W.2d 852, 856; Fenneren v. Smith, Mo., 316 S.W.2d 602, 608), and failure "to place a warning" could not have been a proximate cause of the accident. Adair v. Cloud, Mo., 354 S.W.2d 866, 870 [3]. Plaintiff's case was not submissible under the second pleaded assignment.

ASSIGNMENT III. The negligence charged in the third pleaded assignment was that defendant "attempted to repair said highway, but negligently and carelessly failed in repairing it so that it would be safe for the public, particularly [for] plaintiff and his driver." We are of the view that, on the record presented, the law imposed upon defendant no obligation to undertake the maintenance or repairing of the old Cape-Jackson road. Winston & Company v. Clark County, 178 Ky. 447, 199 S.W. 51, 53; Sumner County v. Interurban Transportation Co., supra, 213 S.W. at 414 [6], 5 A.L.R. at 768.

We have concluded that the plaintiff failed to make a submissible case of negligence against defendant upon this assignment. All of the cases cited by plaintiff (and many others) have been examined but we have not found any involving the precise factual situation as that in the case at bar. There are some rules that have evolved from somewhat analogous situations which upon casual consideration appear to be contrary to our views. However, since this case involves an improved public highway upon which defendant was simply endeavoring to make temporary re-

---

1. E. g., Grab v. Davis Construction Co., 233 Mo.App. 819, 109 S.W.2d 882, where mud falling from defendant contractor's trucks formed a slippery and muddy coating on the paved roadway at the point of accident; Knorr v. Wells, Mo.App., 270 S.W. 391, where defendant receiver's employees discharged water onto the street to lubricate street railway tracks on a curve; Smith v. Markham, Brown & L. L. Sanders, La.App., 61 So. 2d 515, where dirt and mud falling from defendant contractor's trucks became a slippery muck; Price v. Parks, 127 Fla. 744, 173 So. 903, where slippery materials falling from defendant contractor's trucks accumulated on a bridge; Solberg v. Schlosser, 20 N.D. 307, 127 N.W. 91, 30 L.R.A., N.S., 1111, where dirt dumped on highway by defendant contractor became wet and froze, creating mounds and holes; and Matsumato v. Arizona Sand and Rock Co., 80 Ariz. 232, 295 P.2d 850, 56 A.L.R.2d 1385, where gravel and rocks spilled from defendant contractor's trucks onto paved roadway.

pairs in order to keep it passable for its trucks, we think that reason and logic would preclude their application in this instance.

It should be borne in mind that, as stated, there was no obligation on defendant to repair or maintain the road and that there is no contention that plaintiff's injuries resulted from any affirmative act of negligence in the manner in which defendant sought to maintain the road. In other words, this is not a case where defendant placed an obstruction on the highway or in some other manner created a condition which made the road more hazardous to traffic than it was before it started making temporary repairs. As we understand it, plaintiff contends that defendant, having undertaken to do some maintenance work on the highway, thereby became legally obligated to use ordinary care to repair it to the extent that it would be reasonably safe for use by the public in driving vehicles thereon.

Plaintiff has cited Franklin v. Kansas City, Mo.App., 260 S.W. 502, and Cregger v. City of St. Charles, 224 Mo.App. 232, 11 S.W.2d 750, but those cases have no application. They are cases in which the plaintiff recovered because of defective streets, but in those cases the defendant city had a duty to use ordinary care to keep the streets reasonably safe. He has also cited Grab v. Davis Construction Co., 233 Mo.App. 819, 109 S.W.2d 882, but that case is clearly distinguishable on the facts. There the defendant contractor was engaged in repairing and rebuilding the highway upon which the casualty occurred. Dirt dropped from its trucks onto the traveled portion of the road and was permitted to accumulate. A rain made the highway slick and caused two vehicles to collide. Defendant was held liable because, under those circumstances, it had a duty to use ordinary care to keep the highway reasonably safe and its trucks had created the dangerous condition which it had failed to use ordinary care to remedy.

We have considered the rule in landlord-tenant cases to the effect that "if the landlord does undertake to make repairs, either voluntarily or by covenant, he must exercise reasonable care in doing so and is liable to his tenant for injuries caused by his negligence or unskillfulness in making the repairs or in leaving the premises in an unsafe condition." Bartlett v. Taylor, 351 Mo. 1060, 174 S.W.2d 844, 847. And, we note that in Bartlett the court rejected the limitation adopted in Logsdon v. Central Development Ass'n, 233 Mo.App. 499, 123 S.W.2d 631, and in some other states to the effect that a landlord, in voluntarily making repairs, is not liable unless he has made the condition of the premises worse or caused them to have a deceptive appearance of safety. This court has, however, limited the rule somewhat by approval of a further rule that " 'The liability of a landlord who undertakes to and does make repairs or improvements on the demised premises is only for his active and direct negligence with regard to the subject matter of his undertaking. His negligent act must be the real cause of the injury, and it is for that alone that he is liable.' " Stewart v. Zuellig, Mo., 336 S.W.2d 399, 402.

There are two other cases which we have considered in connection with the contention before us. In Berry v. Emery, Bird, Thayer Dry Goods Co., 357 Mo. 808, 211 S.W.2d 35, a store owner was held liable for injuries plaintiff received from a broken, defective light standard where it had (over a long period of time) gratuitously assumed responsibility of ownership, control, and maintenance of such standards in abutting sidewalk since, under those circumstances, said defendant had the duty to exercise due care in maintaining them in a reasonably safe condition. In Swanson v. Godwin, Mo., 327 S.W.2d 903, 908 [3], it was held that, where the owner and operator of a small office building and a parking lot in the rear had for a long period of time undertaken to light the lot at night, "they thereby assumed the duty to exercise reasonable care in furnishing adequate light."

As indicated, we think the particular situation before us distinguishes this case from those heretofore mentioned. Here, defendant was not purporting to make any repairs to the highway that were permanent in nature. The maintenance was temporary in that defendant would fill the holes with loose chat and after it would "wallow out" as a result of the vehicular traffic the holes would be refilled either by using new chat or by the grader blading the old chat and pieces of asphalt back into the holes.

■ We think the following is applicable in this situation: "One may render himself liable for the safety of a highway or sidewalk by the voluntary construction of improvements, the performance of work, or the assumption of some duty with respect to the maintenance or repair of the way. *However, in such case the liability is no broader than the assumption of duty.*" 39 Am.Jur.2d, Highways, Streets and Bridges, § 361, p. 745. (Emphasis ours.) It should have been apparent to everyone who observed defendant's efforts that it had not assumed the duty of making the road reasonably safe. It was simply trying to keep the road usable, primarily for its trucks. As stated by witness Keene, "we thought we were doing the best we could; * * * they would smooth it up with this motor patrol and it was just like running through jello or something. You just couldn't keep it up there. I mean when we'd come through with a load, naturally, it would wallow out again * * and it just wallowed out at the best they could do, and it was bad, real bad." It would appear that the only method by which this macadam surface could have been made reasonably safe, i. e., substantially restored to the condition as it existed before the holes developed, would have required a substantial rebuilding thereof, an obligation of the public body having jurisdiction over the road. Defendant did not have the obligation nor the authority to undertake such rebuilding.

It is common knowledge that a few years ago when there were many dirt roads in this state farmers would often attempt to fill mudholes and perform other acts of partial maintenance on the public roads near their homes in an effort to keep the road usable. Under those conditions it would have been most unreasonable to hold that such voluntary acts imposed upon those farmers the legal duty of using ordinary care to keep that portion of the road reasonably safe.

■ As indicated, we have concluded that in dealing with a public road upon which the macadam surface had substantially broken up, a user of the road can make repairs and perform maintenance which will improve the condition of the road temporarily without the assumption of the legal duty to use ordinary care to keep the road reasonably safe. The rule relating to voluntary repairs in landlord-tenant and certain other cases cannot reasonably be applied in the factual situation disclosed in the instant case.

What we have heretofore said will indicate our view that plaintiff did not make a submissible case of negligence on any of the three assignments. Our conclusion makes it unnecessary to rule defendant's contention that plaintiff was guilty of contributory negligence as a matter of law.

The judgment is affirmed.

HENLEY, C. J., and MORGAN, J., concur.

DONNELLY, J., concurs in result.

SEILER, J., and STONE, Special Judge, dissent in separate dissenting opinions filed.

STORCKMAN, J., dissents in separate dissenting opinion filed, and concurs in separate dissenting opinions of STONE, Special Judge, and SEILER, J.

FINCH, J., not sitting.

SEILER, Judge (dissenting).

I concur in Judge Stone's dissent that having undertaken repairs and maintenance the defendant contractor was obligated to exercise ordinary care for the safety of others using the road, but I would also hold that the defendant was liable on the basis that it had negligently created a dangerous condition in a public road making it unsafe for public travel, which it seems to me comes within the first pleaded assignment of negligence about overloading the trucks and driving them at an unreasonable rate of speed. It is possible to do a lawful act on a highway in the sense of complying with certain limitations and yet do it negligently. It happens frequently in automobile negligence cases, where compliance with the legislative minimum " * * * does not prevent a finding that a reasonable man would have taken additional precautions where the situation is such as to call for them * * *", Restatement of Torts 2d, Sec. 288C, Comment, p. 40; Gerdel v. Broccard (Mo.Sup.) 428 S.W.2d 492, 496; Silvey v. Missouri Pacific Railroad (Mo.Sup.), Div. Two, 445 S.W.2d 354, decided September 8, 1969.

The majority opinion finds no liability under plaintiff's first assignment because "a lawful act performed on the highway in a lawful manner does not give rise to an action in tort." It is respectfully submitted this assumes the very thing in question—i. e., that defendant's actions were lawful acts done in a lawful manner. It is a jury question whether knowingly driving extremely heavily loaded trucks every five minutes over a soft spot in a highway in such a way as to rut out or create a trench or hole dangerous to the traveling public is a lawful act done in a lawful manner or an unlawful act done in an unlawful manner.

Even though it was operating its trucks within the speed limits and within the weight limitations for the trucks, defendant could see what the trucks were doing to the road and as a resonable person could thereby foresee a risk of injury to others using the highway. The duty thus arose to use the requisite care to avoid such risk and if that negligence was the proximate cause of plaintiff's injury, then defendant would be liable, assuming plaintiff was not guilty of contributory negligence, which I agree was a jury question under the facts before us. The facts present all the elements of a negligent tort: a duty on the defendant not to use the road in such a way as to make it dangerous for plaintiff or other users, conduct on the part of the defendant involving a foreseeable risk of injury to those in the position of plaintiff, failure on part of defendant to exercise reasonable care to avoid such risk, and proximate cause.

Finally, it seems to me the majority opinion establishes a dubious public policy—namely, that an operator can use our public highways in such an extreme manner as to destroy them with impunity. Public highways, including secondary highways, are too important and costly these days to be exposed to such use without recourse. The majority opinion removes any incentive for reasonable restraint by a heavy operator. In the words of the old English proverb, he is free to "Ride a free Horse to Death, and never mind what becomes of him afterwards."

STONE, Special Judge (dissenting).

Reduced to the role of deferential dissent as the author of one of the rejected opinions, both of which reached a contrary conclusion to the principal opinion, I have no difficulty or hesitation in joining heartily in the familiar language of that opinion disallowing defendant's preliminary contention, outlining the facts, and dealing with Assignments I and II. But, although entertaining appropriate respect for my brethren of the judiciary who grace the bench of this high court and have honored me by inviting my participation in consideration of this cause, I am moved by settled conviction to record my views concerning

Assignment III and disposition of the case on appeal.

Although I share the belief that the law imposed upon defendant Harrison no obligation to undertake the maintenance or repair of the old Cape-Jackson road [Winston & Co. v. Clark County, 178 Ky. 447, 199 S.W. 51, 53; Sumner County v. Interurban Transportation Co., 141 Tenn. 493, 213 S.W. 412, 414 (6), 5 A.L.R. 765, 768], I am of the further opinion that the evidence reasonably would have permitted a finding that defendant voluntarily assumed that obligation during the period relevant to this discussion.

Many years ago Mr. Justice Cardozo declared "[i]t is ancient learning that one who assumes to act, even though gratuitously, may thereby become subject to the duty of acting carefully, if he acts at all." Glanzer v. Shepard, 233 N.Y. 236, 135 N.E. 275, 276, 23 A.L.R. 1425; Marks v. Nambil Realty Co., 245 N.Y. 256, 157 N.E. 129 (2). Soundly bottomed on that principle, there is substantial authority that "[o]ne may render himself liable for the safety of a highway or sidewalk by the voluntary construction of improvements, the performance of work, or the assumption of some duty with respect to the maintenance or repair of the way." 39 Am.Jur.2d Highways, Streets, and Bridges § 361, p. 745. See Trigg v. H. K. Ferguson Co., 30 Tenn.App. 672, 209 S.W.2d 525, 533 (10, 11); Cummings v. Henninger, 28 Ariz. 207, 236 P. 701, 703, 41 A.L.R. 207; McMahon v. Second Avenue Railroad Co., 75 N.Y. 231, 235, 238. Quoting Mr. Justice Cardozo's happily-formulated statement and citing Bartlett v. Taylor, 351 Mo. 1060, 174 S.W. 2d 844, this court held in Berry v. Emery, Bird, Thayer Dry Goods Co., 357 Mo. 808, 818–819, 211 S.W.2d 35, 40–41 (2, 3), that, having assumed the responsibility of ownership, control and maintenance of light standards set in the sidewalk, the named defendant had the duty to exercise due care in maintaining them in a reasonably safe condition for travelers.

The "felicitous aphorism" [Logsdon v. Duncan, Mo., 293 S.W.2d 944, 950] of Mr. Justice Cardozo also has been quoted with approval in several other Missouri cases, and the principle affirmed therein has found application in a variety of circumstances. Thus, if a landlord, having no obligation to keep demised premises in repair, nevertheless undertakes to make repairs, "he must exercise reasonable care in doing so and is liable to his tenant for injuries caused by his negligence or unskillfulness in making the repairs or in leaving the premises in an unsafe condition." Bartlett v. Taylor, supra, 351 Mo. at 1066, 174 S.W.2d at 847–848(2); Fitzpatrick v. Ford, Mo., 372 S.W.2d 844, 851 (7); Stewart v. Zuellig, Mo., 336 S.W.2d 399, 402 (2); Nuckols v. Andrews Investment Co., Mo.App., 364 S.W.2d 128, 135 (2). See Kennedy v. Bressmer, Mo.App., 154 S.W.2d 401 (1); Marks v. Nambil Realty Co., supra. In this connection, it is appropriate to note that the appellate courts of Missouri, as well as those in some other jurisdictions [e. g., Olsen v. Mading, 45 Ariz. 423, 45 P.2d 23, 25–26; Janofsky v. Garland, 42 Cal.App.2d 655, 109 P.2d 750, 751 (3); annotation 150 A.L.R. 1373, 1378], have followed the Court of Appeals of New York [Marks v. Nambil Realty Co., supra, 157 N.E. at 130 (3)] in refusing to limit the liability of a landlord voluntarily undertaking repairs "by the requirement of making the premises more dangerous or changing the physical condition of the premises for the worse or by giving a deceptive appearance of safety * * *." Bartlett v. Taylor, supra, 351 Mo. at 1068, 174 S.W.2d at 849 (4). See Malon v. Service and Management Co., Mo.App., 416 S.W.2d 44, 47; Nuckols v. Andrews Investment Co., supra, 364 S.W.2d at 135–136; Kennedy v. Bressmer, supra, 154 S.W.2d at 405, 406 (2). Of course, the landlord's " 'negligent act must be the real cause of the injury, and it is for that alone that he is liable.' " Stewart v. Zuellig, supra, 336 S.W.2d at 402.

In Wolfmeyer v. Otis Elevator Co., Mo., 262 S.W.2d 18, 22 (2), another instance in

which this court approvingly quoted Mr. Justice Cardozo's classic pronouncement [262 S.W.2d at 23], it was said that "whatever it was defendant undertook to do which it knew or should have known or foreseen would affect plaintiff's safety, the defendant had the duty to do it carefully," although that principle was there inapplicable because "our problem [was] not one involving an act or omission in doing what defendant had undertaken (or assumed) to do." 262 S.W.2d at 23. In Swanson v. Godwin, Mo., 327 S.W.2d 903, 908 (3), it was held that, where the owner and operator of a small office building and a parking lot in the rear had undertaken to light the lot at night, "they thereby assumed the duty to exercise reasonable care in furnishing adequate light." And I am reminded that a physician, though motivated only by humanitarian considerations and acting as a good Samaritan, who voluntarily undertakes gratuitous treatment of an injured person, thereby becomes charged with the duty of exercising the same degree of professional care and skill as he would in the treatment of any other patient. 70 C.J.S. Physicians and Surgeons § 52, p. 975; Id. § 46, p. 954; 41 Am.Jur. Physicians and Surgeons § 71, 1. c. 193; Parkell v. Fitzporter, 301 Mo. (banc) 217, 227, 256 S.W. 239, 242, 29 A.L.R. 1305; Persten v. Chesney, Mo.App., 212 S.W.2d 469, 473 (2).

Granting that the liability of one who assumes some duty with respect to maintenance or repair of a highway "is no broader than the assumption of duty" [39 Am.Jur.2d Highways, Streets, and Bridges § 361, p. 745], in my view of the record it may not be said as a matter of law that, during the period relevant to this discussion, defendant Harrison had not assumed the obligation of maintaining the old Cape-Jackson road at and near the Heuer hole. It will be remembered that from November 1, 1961, to the date of accident, to wit, December 22, 1961, about ten of defendant's tandem dump trucks were steadily engaged in the hauling operation over the old Cape-Jackson road; that "in

two or three days" or "the first week, maybe" the asphalt surface began to break and defendant moved a motor patrol, i. e., a road grader, onto the road; that thereafter defendant's employees hauled chat for the road "every day," spread it on the broken areas, and undertook to keep the road "level" and "smooth" by grading it with the motor patrol which was "on the job all the time," was at the Heuer hole "every day at some time," and bladed it "at least three times a week"; and that "they fixed it [the Heuer hole or ditch] before they ever got the truck out" after the accident.

Neither can I agree that the record dictates the conclusion that defendant Harrison "was simply trying to keep the road usable, primarily for its trucks." On the contrary, the joint brief of defendants does not present either of them in that posture. There are three points in that brief. The first point is that plaintiff's motion for new trial was too general to preserve the question of submissibility for appellate review. The second point, underscored both in the trial court and on appeal, is that plaintiff was guilty of contributory negligence as a matter of law. The third point, to which counsel cite no supporting authority, is: "Defendants were not guilty of any negligence. *Defendants continuously hauled gravel or rock every day and were constantly trying to maintain the road as best they could under the conditions."* (Emphasis mine)

True, defendant Harrison's maintenance was "temporary" in that continuing traffic on the road required frequent refilling of holes that "wallowed out" and necessitated repeated reblading of the road. However, the established and admitted fact that defendant "continuously hauled gravel or rock every day" and "constantly [tried] to maintain the road as best [it] could under the conditions" simply buttresses the conclusion (to me logical and inescapable) that the triers of the facts reasonably might have found that defendant undertook and assumed the obligation of main-

taining the road during the period relevant to this discussion; and, if that obligation was assumed, the "temporary" character of the work done by defendant could not have altered or affected the nature and scope of that assumed obligation, which was to exercise ordinary care for the safety of those lawfully using that road and to act reasonably and with due regard for their rights. Joshmer v. Fred Weber Contractors, Inc., Mo.App., 294 S.W.2d 576, 582 (2), and authorities there cited; Grab v. Davis Construction Co., 233 Mo. App. 819, 826, 830, 109 S.W.2d 882, 885 (4), 887 (11); 40 C.J.S. Highways § 254, p. 291; 60 C.J.S. Motor Vehicles § 203, l.c. 1030.

I am persuaded that the evidence upon trial raised and presented submissible issues as to whether or not, during the period relevant to this discussion, defendant (a) had voluntarily assumed the obligation of repairing and maintaining the old Cape-Jackson road at and near the Heuer hole and (b) had breached the aforesaid duty imposed by law upon such voluntary assumption of the obligation to repair and maintain. That the Cape Special Road District also may have had a duty to repair and maintain the road did not alter the rule of liability as to defendant. Robinson Oil Corp. v. Davis, 171 Okl. 557, 43 P.2d 754, 757 (2). Accordingly, I would hold that plaintiff's case was submissible under the third pleaded assignment of negligence.

Being of that mind, I would proceed to consideration of the contention, upon which defendant principally relied both in the trial court and on appeal, i. e., that a verdict was properly directed against plaintiff because his evidence established contributory negligence as a matter of law. It is true that, as defendant emphasizes, when dangers are either reasonably manifest or known to a guest who has an adequate opportunity to influence the situation for his safety, he is guilty of contributory negligence as a matter of law if he sits by without warning and permits himself to be driven carelessly to his injury. Thurman v. St. Louis Public Service Co., Mo., 308 S.W.2d 680, 684; Ezell v. Kansas City, Mo., 260 S.W.2d 248, 250 (3); Kaley v. Huntley, 333 Mo. 771, 63 S.W.2d 21, 24 (10). However, a guest in a motor vehicle is required to exercise only ordinary care for his own safety [Happy v. Blanton, Mo., 303 S.W.2d 633, 638 (8); Taylor v. Taylor, 360 Mo. 994, 232 S.W.2d 382, 385 (4); State ex rel. Alton R. Co. v. Shain, 346 Mo. (banc) 681, 143 S.W.2d 233, 238 (9)], whereas the driver is charged with the duty of exercising the highest degree of care. V.A.M.S. § 304.010 (1); Swinger v. Bell, Mo., 373 S.W.2d 30, 35. Although the law does not permit a guest to intrust his safety absolutely to the driver regardless of impending danger or apparent lack of caution on the driver's part, it does not require the guest to exercise the same vigilance as the driver [Cotton v. Pyle, Mo., 400 S.W.2d 72, 77 (7); Buehler v. Festus Mercantile Co., 343 Mo. (banc) 139, 119 S.W.2d 961, 965; Smith v. St. Louis-San Francisco Ry. Co., 321 Mo. 105, 9 S.W.2d 939, 946 (6)], and it has long been considered "a matter of common knowledge that under ordinary circumstances such occupants do largely rely upon the driver, who has the exclusive control and management of the vehicle, exercising the required degree of care, and for that reason courts are not justified in adopting a hard and fast rule that they are guilty of negligence in doing so." Boland v. St. Louis-San Francisco Ry. Co., Mo., 284 S.W. 141, 144 (5); Fann v. Farmer, Mo.App., 289 S.W.2d 144, 148 (4), and cases collected in note 1.

The conduct of a guest with respect to the exercise of care in operation of a vehicle must be judged primarily with reference to the driver's conduct and the guest's ability to control the driver [Boland v. St. Louis-San Francisco Ry. Co., supra, 284 S.W. at 144 (1); Fann v. Farmer, supra, 289 S.W.2d at 148 (8)]; and, since "[n]egligence depends upon the surrounding circumstances, as well as the particular conduct involved, because an act or omission which would clearly be negli-

gence in some circumstances might not be so in other situations" [Fortner v. St. Louis Public Service Co., Mo., 244 S.W. 2d 10, 13 (2); Rentfro v. Wheelock Brothers, Inc., Mo.App., 364 S.W.2d 55, 58], each case must rest upon its own particular facts. Ketcham v. Thomas, Mo., 283 S.W.2d 642, 646; Knox v. Weathers, 363 Mo. 1167, 257 S.W.2d 912, 916 (6); Wilson v. Cade, Mo.App., 375 S.W.2d 577, 581.

Instant plaintiff was riding in a truck driven by his cousin John, then a member of the State Highway Patrol, who was familiar with the road and aware of the Heuer hole. A timely warning was the only practical means by which plaintiff could have influenced the driver's conduct or his operation of the truck. Cf. Wolfe v. Harms, Mo., 413 S.W.2d 204, 213. Plaintiff testified that he gave a specific warning when the truck was 75 yards from the hole and John agreed that he and plaintiff "were discussing" the hole as the truck approached it. According to John, he "kicked" the truck transmission down to a lower gear which slowed the truck "rather rapidly"—"I thought I slowed down enough"; but nevertheless he lost control of the truck when its left front wheel went into the hole at an approximate speed of 25 miles per hour, which incidentally was within the estimated range of 20 to 25 miles per hour at which plaintiff had safely traversed the hole in an automobile only a short time previously.

Judicial declaration that a plaintiff has been contributorily negligent as a matter of law is permissible and proper only where it may be said on the whole evidence and all inferences deducible therefrom, when viewed in the light most favorable to him, that the only reasonable conclusion is that he was guilty of negligence which was a proximate cause of his injury. Combellick v. Rooks, Mo. (banc), 401 S.W.2d 460, 462 (1); Bennett v. Kitchin, Mo., 400 S.W.2d 97, 101; Dye v. Geier, Mo., 345 S.W.2d 83, 87 (3); Kickham v. Carter, Mo., 314 S.W.2d 902, 908 (8); Day v. Mayberry,

Mo.App., 421 S.W.2d 34, 42 (17). Appropriate respect for this and the other principles noted in discussion of this point would constrain my conclusion that the issue as to plaintiff's contributory negligence was for the jury.

I would affirm the judgment as to defendant Potashnick but, as to defendant Harrison, would set aside the judgment and remand the cause for retrial.

STORCKMAN, Judge (dissenting).

I dissent and concur in the separate dissenting opinions of Stone, Special Judge, and Seiler, J.

Further, I believe the defendant Harrison is subject to liability for a wilful and wanton tort or for the creation of a public nuisance. The defendant as a private person was engaged in the construction of a public road which is a proper purpose, but he is not entitled to do so at the expense and to the damage of others. Generally, private persons are considered liable for dangerous conditions created by them in a public highway. 39 Am.Jur.2d, Highways, Streets and Bridges, § 359; 40 C.J.S. Highways § 252, p. 286. In the aggravated circumstances of this case, I can make no distinction between imposing a dangerous substance or obstruction on the surface of a highway and a deliberate and wanton creation of a hole in the highway. The defendant's employees saw that the highway was being destroyed in several places by the use they were making of it, but the defendant knowingly continued his use of it. The defendant found it necessary to repair the highway in order to make it suitable for his continued use of it.

The defendant in effect appropriated the highway and by his excessive use of it destroyed the highway in certain places and knowingly created dangerous defects. It cannot be denied that the use made by the defendant was inordinate and excessive and the defects created were not an incident of normal and customary usage.

This is a legal wrong for which there should be a remedy.

I have found no case on similar facts but such a situation should be covered as well by the rule which provides liability in cases where a highway user negligently deposits foreign substances and obstructions on highways.

For these reasons I respectfully dissent.